[S. F. No. 6453. Department Two.—June 23, 1915.]

## HUGH R. OSBURN, Appellant, v. G. W. STONE et al., Respondents.

MUNICIPAL CORPORATIONS—ILLEGAL PAYMENTS FROM PUBLIC FUNDS—SUIT BY TAXPAYER TO COMPEL REPAYMENT.—A taxpayer can maintain an action against the mayor and members of the city council of an incorporated city to compel them to pay into the city treasury for the benefit of the taxpayers and property owners of the city the amount of expenditures illegally made by them from the funds of the city.

ID.—DEMAND.—In such an action, where it appears that a demand upon the officers to commence such a proceeding would be unavailing, it is unnecessary to make such a demand.

ID.—NONJOINDER OF MUNICIPALITY AS DEFENDANT—SUSTAINING DEMURRER WITHOUT LEAVE TO AMEND.—While it is the general rule that the municipality itself, upon the refusal of its officers to maintain the action, should be impleaded as a party defendant, when the prayer of the complaint asks that the recovery be paid into the city treasury, it is improper to sustain without leave to amend a general demurrer to the complaint upon the ground that the municipality was not made a party defendant to the action.

ID.—CHARTER OF THE CITY OF SANTA CRUZ—VROOMAN ACT—STREET WORK.—Under the terms of section 246 of the charter of Santa Cruz, the method by which the powers granted in section 14 of article II of the charter, shall be pursued, is that prescribed in the Vrooman Act (Stats. 1885, p. 147), and the provisions of section 16 of the charter are but a specific grant of power authorizing the council to do these things in legal and proper cases, and does not overthrow the general provisions of the Vrooman Act prescribing the method by which they shall act in the exercise of such power.

ID.—VROOMAN ACT—RESOLUTION OF INTENTION—WHEN NECESSARY.—The resolution of intention prescribed in the Vrooman act is jurisdictional and necessary in any case where it is sought to bind in whole or in part private property for the payment for the work to be done, but such resolution of intention is not necessary if the

work be of a character which the city proposes to do and may legally do at its own proper expense.

ID.—RECOVERY OF MONEY ILLEGALLY PAID OUT—SUFFICIENCY OF COMPLAINT AGAINST GENERAL DEMURRER.—A count alleging that work exceeding in cost sixteen thousand dollars, was to a large extent illegally done, without resolution of intention, competitive bids at the letting of a contract, and that it was paid for out of funds of the city when it should have been by assessment on private property, accounting for the uncertainty of the allegations as to the circumstances surrounding each item by the fact that the records do not enable the pleader more specifically to describe the illegal character of the claims and demands audited, allowed, and paid for the work, is sufficient to withstand a general demurrer.

ID.—GENERAL WELFARE CLAUSE—INCLUDES POWER TO LIGHT STREETS UNDER POLICE POWER.—A general welfare clause in a charter containing no express provision as to lighting streets, empowering the authorities "to exercise, within constitutional and statutory limits, all municipal and police powers necessary to the complete and efficient administration of the municipal government, although such powers may not be herein expressly enumerated," authorizes the officials of the city to provide for, and incur expense in, lighting its streets.

ID.—STREET LIGHTING—ACT OF 1905 CONTROLS EXERCISE OF POWER IN ABSENCE OF CHARTER PROVISION.—The authority of the officers of a city to light the streets of the city under the provisions of the general welfare clause above-stated is controlled by the provisions of the street lighting act of 1905, (Stats 1905. p. 564).

ID.—CONTRACTS WITH OFFICIALS—MUNICIPAL CORPORATION ACT—RENTAL OF SURVEYING OUTFIT—ILLEGAL PAYMENT.—A payment for the rental of a surveying outfit upon a contract made with an official of the city in violation of the provisions of section 811 of the Municipal Corporation Act, which applies to cities of the fifth class of which Santa Cruz is one, is an illegal payment.

ID.—LEGAL SERVICES—PAYMENT TO MEMBER OF BOARD OF EDUCATION—ILLEGAL PAYMENT.—A payment of a sum of money to a law partnership for services to be rendered by them under a contract entered into at a time when a member of the firm was a member of the board of education of the city, is an illegal payment.

ID.—HUMANE OFFICER—POWER TO EMPLOY UNDER POLICE POWER.—The employment by a city of a person called a humane officer for the purposes indicated by the title given to him, although such officer is not referred to in the charter, is within the police powers of the city, and a payment to him for services is not illegal.

APPEAL from a judgment of the Superior Court of Santa Cruz County.   John E. Richards, Judge presiding.

The facts are stated in the opinion of the court.

Hugh R. Osborn, *in pro. per.* for Appellant.

W. P. Netherton, and J. Leslie Johnston, for Respondents.

HENSHAW, J.—A general demurrer was sustained to plaintiff's complaint and from the judgment which followed it, dismissing the action, plaintiff appeals. The complaint charged that the defendants while acting, one as mayor, the other as members of the council, of the city of Santa Cruz, made certain illegal expenditures for and on account of which plaintiff seeks a judgment against them, compelling them to pay into the city treasury for the benefit of the tax-payers and property owners of the city the sum of $37,163.

So far as the character of this action is concerned, by the great weight of authority a taxpayer may maintain it. The provision of section 526a of the Code of Civil Procedure, authorizing a taxpayer to maintain an action to restrain an illegal expenditure, does not in letter or in spirit forbid a taxpayer from seeking to recover on behalf of his municipality the same moneys if illegally expended. Tacitly, this right of action has been recognized in this state in *Mock* v. *Santa Rosa,* 126 Cal. 331, [58 Pac. 826]. That the right to prosecute such an action is abundantly supported may be seen by reference to *Cathers* v. *Moores,* 78 Neb. 17, [14 L. R. A. (N. S.) 302, 113 N. W. 119]; *Zuelly* v. *Casper,* 160 Ind. 455, [63 L. R. A. 133, 67 N. E. 103]; *Russell* v. *Tate,* 52 Ark. 541, [20 Am. St. Rep 193, 7 L. R. A. 180, 13 S. W. 130]; *Independent School Dist.* v. *Collins,* 15 Idaho, 535, [128 Am. St. Rep. 76, 98 Pac. 857]; 2 Smith on Municipal Corporations, sec. 1645; 4 Dillon on Municipal Corporations, sec. 1588. The contrary view obtains in Oregon and in West Virginia. (*Brownfield* v. *Houser,* 30 Or. 534, [49 Pac. 843]; *Sears* v. *James,* 47 Or. 50, 55, [82 Pac. 14]; *Bryant* v. *Logan,* 56 W. Va. 141, [3 Ann. Cas. 1011, 49 S. E. 21].) These courts reason that it would subject the officers of municipalities to intolerable and interminable litigation if the right of a taxpayer to prosecute such an action were recognized. Yet to us it seems quite plain that the necessity to a municipality, whose affairs are in the hands of hostile trustees or councilmen, to recover for illegal expenditures, through the medium

of such an action, is quite as great and as imperative as it is in the case of private corporations, and as a stockholder of the latter would have on behalf of his corporation, upon the refusal of its directors to act, the right to maintain such an action, so we think should a taxpayer in the case of a municipality be accorded the same right and power.

The complaint charged in ten separate counts, alleging illegal payments in matters of widely different character. The general rule is that the municipality itself, upon the refusal of its officers to maintain the action, should be impleaded as a party defendant, but of course it is fundamental that where a demand would be unavailing, as is shown to be the case under the present complaint, a demand upon the municipal authorities so to commence proceedings is unnecessary. (*Mock* v. *Santa Rosa,* 126 Cal. 331, [58 Pac. 826].) In this case the city of Santa Cruz was not formally impleaded. By the prayer of the complaint, however, it is asked that the recovery which was sought should be paid into the treasury of the city. The general demurrer should not have been sustained without leave to amend for the technical absence of the municipality as a party defendant.

Since the general demurrer to plaintiffs right to maintain this character of action was improperly sustained, it becomes necessary to consider at least briefly these separate counts. The learned judge of the trial court seems to have taken the view that because there was a power within the municipality to make the expenditures complained of, that because the municipality had jurisdiction, so to speak, over the subject-matter of these expenditures, the asserted irregularities and illegalities in the mode of payment could not form the subject of an action against the officials. The argument here advanced by respondent is that the city council had general jurisdiction over and general power to do all the things complained of and that "the lower court properly held that it would become utterly impossible to induce good and responsible men to serve the public in an official capacity if the courts of this state should sanction an action of this kind by which it is sought to declare a public official's private property forfeited when he has done no wrong, and there is no showing that the taxpayers of the city have not received full value for every cent of money expended. It would, therefore, be an absolute contravention of sound public policy

to deprive cities of the public services, in an official capacity, of their responsible citizens of substance who might, at any time, be made the victims of such an outrageous action as this at the instance of some spiteful and politically aggrieved person.'' There is a modicum of truth in this, but only a modicum. The converse of the argument is that the powers of municipal officers are well defined. Their modes of procedure in all matters of expenditure are pointed out with particularity. They are given by law a legal adviser, and, if not, are fully empowered to employ one. There is no occasion whatsoever for their taking any step without such advice. There is no reason for their ever making any illegal expenditure of the public's moneys. To countenance the making by these officials of an illegal expenditure in one case, is to open wide the door for like expenditures in every case. And even if it can be truly said that in a specific instance the citizens and taxpayers have received the benefit of the expenditure, this by no means answers the objection that the expenditure itself was illegal. Let us use but one illustration. Charters usually call for competitive bidding on contracts involving the expenditure of moneys over a fixed amount. Assume that such a contract is let by the council without the required competitive bidding; assume further that the contract has been properly performed, who shall say that the price at which the contract was so let was the lowest reasonable price that could have been obtained if bids had been called for, and who will not at once say that to permit this is to open wide the door to favoritisms of all kinds, the very prevention of which was one of the important purposes of the law?

Coming now to the counts of the complaint, the first, third, fourth, eighth, and ninth charge, illegal expenditures of the city's funds for street work. Jurisdiction of street work is given to the city and city council by section 14 of article II of its charter. (Stats. 1911, p. 1866.) But the provisions of the charter declare merely, in general language, that the city council is empowered to establish and change the grade and to lay out, open, extend, widen, narrow, vacate, pave, and repave, etc., the streets, and alleys and highways. The method by which this must be done, the course which must be pursued, is that prescribed in the Vrooman Act [Stats. 1885, p. 147], whose terms become a part of the charter provisions

under section 246 thereof.  It is not to be doubted, under
this condition of the law of Santa Cruz, that the General
Street Act provides the mode and measures the power of the
municipal authorities in the matters with which this general
street law deals.  The authorities are too abundant and too
uniform upon this proposition to call for anything more than
a citation to a few of them.  (*Los Angeles* v. *Waldron,* 65
Cal. 285, [3 Pac. 890] ; *Thomason* v· *Ashworth,* 73 Cal. 73,
[14 Pac. 615] ; *Hellman* v. *Shoulters,* 114 Cal. 157, [44 Pac.
915, 45 Pac. 1057] ; *City Street Imp. Co.* v. *Broderick,* 125
Cal. 139, [57 Pac. 776] ; *Redondo Beach* v. *Cate,* 136 Cal. 146,
[68 Pac. 586] ; *Clouse* v. *City of San Diego,* 159 Cal. 434,
[114 Pac. 573].)   The provisions of section 16 of the charter
authorizing the city council to levy and collect "assessments
upon property to pay for grading, regrading, laying out,
opening, widening, narrowing, extending, and improving
streets," etc., does not overthrow the general provisions of
the street law, and is but a specific grant of power authoriz-
ing the council to do these things in legal and proper cases.
It follows herefrom that in the matters of street work pro-
vided for in the Vrooman Act, that act, as it then stood at the
time these expenditures were made, is controlling.  Section
one of that act provides that the work therein described shall
be done under proceedings therein set forth.  Section three
of the act provides for the acquiring of jurisdiction to do the
work after notice and hearing.  Section five provides for the
letting of all work to the lowest bidder.  Section seven pro-
vides for assessing the expenses of any work provided in the
act on the lots and lands benefited thereby, unless it is de-
clared in the resolution of intention that a part of the ex-
penses shall be paid out of the city treasury in a case where
some of the lots may be damaged rather than benefited by the
improvement.  The resolution of intention, in all the cases
contemplated by the Vrooman Act where private property is
to be held for payment of the work, is the initial step by
which jurisdiction is acquired.  (*Baudry* v. *Valdez,* 32 Cal.
276; *Himmelmann* v. *Satterlee,* 50 Cal. 68; *Schwiesau* v.
*Mahon,* 128 Cal. 116, [60 Pac. 683] ; *California Imp. Co.* v.
*Moran,* 128 Cal. 373, [60 Pac. 969] ; *McDonnell* v. *Gillon,* 134
Cal. 330, [66 Pac. 314].)   Where the mode is thus prescribed,
any radical departure from it results in a void contract.
(*Argenti* v. *City of San Francisco,* 16 Cal. 283; *McCracken*

v. *City of San Francisco,* 16 Cal. 620; *Zottman* v. *San Francisco,* 20 Cal. 96, [81 Am. Dec. 96]; *Nicolson Paving Co.* v. *Painter,* 35 Cal. 699; *McCoy* v. *Briant,* 53 Cal. 250.)

The first count charges the illegal payment of $16,086.50 for work upon the public streets, avenues, lanes, alleys, courts, etc., of the city. It is alleged that the claims so audited, allowed, and paid were not itemized, and for that reason it is impossible for the plaintiff to make the allegations of his complaint more specific as to the character of the work done or where it was done; that no resolution of intention to perform the work was ever passed or adopted; that no competitive bids or proposals were ever called for; that the work was not let to the lowest responsible bidder; that no assessment was ever levied upon the lots or lands fronting upon the streets upon which the work was done, but, to the contrary, it was done by day labor and paid for out of the general fund of the city. It is alleged that upon certain of these streets work was done in accordance with the provisions of the street law and the cost of the work properly charged against the property benefited thereby, but the cost of other parts of the work was not made a charge against the properties, but remained a charge against and was paid out of the funds of the city. The third count is for the payment of certain small sums, each less than five hundred dollars, in the matter of widening River Street in the city, these claims being the surveyor's bill of four hundred and eleven dollars, an advertising bill for forty-seven dollars, and a bill for clerical work of thirty-nine dollars. It is alleged that the proceedings looking to the widening of River Street were not legally taken, and that the claims were not legal claims. The fourth count charges an illegal expenditure of three hundred and twenty-seven dollars in the same matter. The eighth and ninth counts are for the recovery of various sums paid for surveying and engineering expenses for work performed on the streets which sums it is asserted were incidental expenses of the work and chargeable upon the affected land. By the second and tenth counts and causes of action the plaintiff seeks to recover from the defendants all sums of money expended for lighting the city, including the cost of electric current and the cost of labor performed and materials furnished for the electrical appliances, upon the theory that the city of Santa Cruz is not empowered to spend any of the

city's funds for lighting purposes, and that the city can be lighted only by making the cost of such current and appliances a charge against the districts benefited, in accordance with the act of March, 1905, to provide for the lighting of public streets, lanes, etc. (Stats. 1905, p. 564.) By the sixth cause of action a recovery is sought of the sum of one hundred and twenty-five dollars illegally paid for rent of a "surveying outfit," which surveying outfit belonged to the street superintendent of the city. The seventh cause of action seeks the recovery of the sum of sixty dollars paid out of the city treasury to J. F. Williams as humane officer of the city. The fifth charges the illegal payment of one thousand dollars for attorney's fees under a contract with a municipal officer.

With this brief statement of the separate counts we come to the consideration of the law applicable to them. Appellant contends, and correctly, that section 16 of the charter of Santa Cruz, authorizing the city and the council to construct and maintain sewers, drains and other works necessary to carry away the sewage and storm water, and section 14, granting power to the city and the council to establish and change the grade and to lay out, open, extend, etc., streets, ways, sidewalks, etc., in the city, are but general grants of power and nothing more. Further, appellant contends, and correctly, that by section 246 of the charter (which reads: "In all matters pertaining to municipal affairs, concerning which no special provision is made in this charter, the general law shall be a part of this charter as far as the same may be applicable"), the provisions of the general street law, in so far as the general street law lays down rules and methods for the exercise of these powers, controls the action of the municipal authorities. Next, if we correctly follow appellant's argument, he insists that a resolution of intention is necessary whenever any work is proposed to be done under the authority of the Vrooman Act. Numerous cases so hold and so declare, and properly do so. But appellant is mistaken if he argues that a municipality can do no work whatsoever for these ends without such a resolution of intention. The resolution of intention is jurisdictional and absolutely necessary whenever it is proposed to bind, in whole or in part, private property for the payment of the work to be done. Otherwise, if it be work of a character which the city proposes to do and may

legally do itself at its own proper charge and expense, no resolution of intention is necessary. It has been frequently declared that for work done under the Vrooman Act a resolution of intention is a jurisdictional prerequisite to the legal doing of it. (*Santa Cruz etc. Co.* v. *Broderick,* 113 Cal. 633, [45 Pac. 863] ; *Flickinger* v. *Fay,* 119 Cal. 592, [51 Pac. 855].) But it is to be borne in mind that the whole scope and purpose of the Vrooman Act is to provide a scheme for the doing of various kinds and classes of work, the cost of which shall be made a charge upon private property, and it is entirely with reference to this fact that these declarations are made. So in *Oakland Paving Co.* v. *Rier,* 52 Cal. 270, this court, in construing the general street law in connection with a special act of the legislature, concerning work to be done upon streets of the city of Oakland, held that it was necessary for the municipal authorities to pass a resolution of intention before the doing of that work. The principle governing work, payment for which is not to be made a charge upon private property, is sufficiently declared in *Partridge* v. *Lucas,* 99 Cal. 519, [33 Pac. 1082], and *Santa Cruz Paving Co.* v. *Broderick,* 113 Cal. 634, [45 Pac. 863].

Dealing now with the first count of the complaint, it is not easy to see whether the work done, exceeding in cost sixteen-thousand dollars, was of the character which the city could do at its own proper charge, or of a character which should have been paid for by abutting property owners. Let us assume, for example, that work is done by a city upon an accepted street. No resolution of intention is necessary for the doing of this work, since the private property is not to be held for the cost of it, and certainly if the estimated cost of the work did not exceed five-hundred dollars it was not incumbent upon the city to have the work performed under contract after competitive bidding. It is asserted, however, in count one that this work, to a very large amount was illegally done, without resolution of intention, without competitive bids, without the letting of a contract, and that it was paid for out of the funds of the city, when it should have been paid for by assessment against the abutting property. It is argued that gross favoritism was shown; that as to some streets the work was done and paid for by the city without warrant in law, and as to other streets similarly situated the owners of property were charged with the expenses of im-

provement. The uncertainty in the count the pleader ex-
cuses upon the ground that the records do not enable him
more specifically to describe the illegal character of the claims
and demands audited, allowed, and paid for this work. The
matters of this count were sufficiently well pleaded to pass
a general demurrer and to call upon the defendants to set
forth their answer justifying such expenditures. If the ex-
penditures were in fact legally made there can, in the nature
of the case, be no difficulty with their ability so to show. If
they were in fact illegally made, clearly the defendants are
responsible, unless equitable considerations may have entered
which would exonerate them from what would otherwise be
their strict legal liability.

What has just been said is applicable also to the third and
fourth and eighth and ninth counts of the complaint. As
to the items embraced in these counts, treating them collec-
tively, but instancing the matter of the widening of River
Street, it would appear that the proceedings for the widening
of this street should have been taken under the general street
law made a part of the charter, and that under this law the
costs incurred became a charge upon the property within the
area or district delimited to bear the expenses of the widening.
There may have been some good reason why these payments
were made out of the funds of the city and not made a charge
against the property owners. But it is for the defendants
in their answer to show that reason.

The second and tenth counts seek a recovery for moneys
expended by the city in the matter of street lighting. The
argument of appellant upon this proposition is that the
charter being silent upon the matter, the city had no right
to incur any expenditures in this regard. True, there is in
the charter no grant of powers in express terms authorizing
the municipality to incur indebtedness for the purpose of
lighting its streets. The charter, however, contains in section
26 a general welfare clause, empowering the authorities "to
exercise, within constitutional and statutory limits, all muni-
cipal and police powers necessary to the complete and efficient
. . . administration of the municipal government, although
such powers may not be herein expressly enumerated." The
lighting of a municipality falls so completely within the all-
embracing arms of the police power,—a city in darkness
would be so anomalous in our modern civilization, that no

authority other than such a general welfare clause is necessary, even if that be necessary, to justify the authorities in providing for street illumination. It is so held. (28 Cyc., 262, 951.) A second argument, however, advanced by appellant contends that, conceding the power to exist, the exercise of that power at the time these expenditures were made was controlled by the provisions of the street lighting act of 1905 (Stats. 1905, p. 564); that this act requires a resolution of intention and the imposition of the cost of the work upon private property precisely as does the street law. No answer to this argument is made by respondent other than the very general response that the municipal authorities, having power to light the streets, could light them by any method they choose. But since the charter of Santa Cruz has seen fit to make the general street lighting law a part of the organic law of the city, it necessarily follows that the authorities are limited in the exercise of their power to the mode prescribed. The demurrer to this count was, therefore, improperly sustained, since something more of an answer is required of the defendants than that given by their counsel in their brief.

The gravamen of the charges in the fifth and sixth counts or causes of action lies in the fact that the contracts under which the moneys were paid were made with officials of the municipality. Contracts such as these are not only denounced by public policy, but are expressly forbidden by section 811 of the Municipal Corporation Act [Stats. 1883, p. 266], which applies to cities of the fifth class, to which Santa Cruz belongs. This section not only prohibits such contracts and makes them void, but forbids the payment of claims arising under them. It would therefore appear, in the absence of an explanatory answer, that the payment of one hundred and twenty-five dollars for the rental of a surveying outfit belonging to the street superintendent of the city and rented by him to the city was an illegal payment, as was also the payment to the law partnership of Netherton & Torchiana of the sum of one thousand dollars for legal services to be rendered by them, when at the time of the entering into the contract and the time of the payment of the money W. P. Netherton, one of this law partnership, was a duly elected, qualified, and acting member of the board of education of the city. (*Capron* v. *Hitchcock,* 98 Cal. 427, [33 Pac. 431]; *Capital G. Co.* v.

*Young,* 109 Cal. 140, [29 L. R. A. 463, 41 Pac. 869].) It is not an answer to this showing of the illegality of the payments to say, as respondents do, that section six of the charter authorized them to acquire and hold and lease and use all kinds of property for the benefit of the municipality, and that section 125 of the charter empowers the city council to employ other attorneys to take charge of or to assist the city attorney in any litigation. For again we repeat, a general power to do these things is not a legal warrant for the doing of them in an illegal way.

The seventh cause of action seeks to recover sixty dollars paid J. F. Williams as humane officer. It is said that there is no such officer known to the charter. The name, however, is of no consequence. We think it within the police powers granted to this city to employ and pay a person for the well known purposes indicated in the title given him. The demurrer to this count was properly sustained.

We have thus in detail considered the specific illegal expenditures charged against these municipal officers. We have expressed·the conclusion that as to all but one the allegations of the complaint call for answer and defense, but it is proper in closing this discussion to say that the trial court will recognize the discretion which in many matters is and of necessity must be vested in public officials, and will recognize, moreover, that for an honest, even though mistaken, exercise of discretionary powers, no public officer is responsible. (*Downer* v. *Lent,* 6 Cal. 94, [65 Am. Dec. 489] ; *Colusa County* v. *De Jarnett,* 55 Cal. 375; *Ballerino* v. *Mason,* 83 Cal. 450, [23 Pac. 530; *McFarland* v. *McCowen,* 98 Cal. 331, [33 Pac. 113] ; *Sacramento Co.* v. *Southern Pacific Co.,* 127 Cal, 217,[59 Pac 568, 825] ; *Newport Wharf Lumber Co.* v. *Drew,* 141 Cal. 103, [74 Pac. 697].) Instances where discretionary powers are so vested in municipal officers are too numerous to need mentioning, but in the case here presented is one to which adversion may be made. It will often occur that when a city is empowered to do a given piece of work, question will arise as to whether or not it should be done by contract or by day labor. The honest exercise of the discretion of the municipality in the matter will not lay the officers liable to action. All that is here decided is that the complaint is sufficient to call upon those officers to answer to the merits of the charges.

The judgment of dismissal is therefore reversed.

Lorigan J. and Melvin J., concurred.