[L. A. No. 7426. In Bank.—June 1, 1923.]

D. C. BARBER, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[1] STREET LAW — CONSTRUCTION OF STREET TUNNEL — IMPROVEMENT ACT OF 1913—ASSESSMENTS—MUNICIPAL CORPORATIONS—CHARTERS. Where proceedings for the construction of a street tunnel were taken by a city in accordance with the Improvement Act of 1913 (Stats. 1913, p. 954; amended Stats. 1915, p. 1217; amended Stats. 1917, p. 970), such city had the authority by virtue of the provisions of said act to levy an assessment to pay for damage caused to private property by the improvement; and the fact that the charter of said city failed to mention some power granted by the act in question cannot be held to constitute a denial of that power to the city or a limitation upon its right to do any of

the things authorized by the act, nor does the fact that the charter was subsequently amended to confer on the city power to exercise authority theretofore conferred only by state law prove that the city was limited to the express terms of its charter.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Delmas & Brown and Delphin M. Delmas for Appellant.

Jess E. Stephens, City Attorney, L. P. Green, Assistant City Attorney, and Charles B. MacCoy, Deputy City Attorney, for Respondent.

LAWLOR, J.—The plaintiff, as a property owner of the city of Los Angeles, whose property was included in the district declared to be benefited by the Second Street tunnel, brought this action to recover $19.26 paid for the redemption of his land after it had been sold for taxes upon the non-payment of the amount assessed against it for the construction of the tunnel. A demurrer to the complaint was sustained and judgment was entered in favor of defendant, whereupon plaintiff took this appeal.

To authorize the construction of a tunnel under Second Street, in the city of Los Angeles, an ordinance of the mayor and council of that city was passed declaring their intention to do the work, reciting that in their opinion damage would result to private property from such improvement and specifying the exterior boundaries of the district to be benefited and specially assessed to pay the cost of the work and the damages caused thereby. Notice of the intention having been mailed to the property owners affected, an ordinance providing for carrying out the work was passed. Following the award of the contract an assessment was levied amounting to $995,773.21, of which $103,702 was to cover the damage done to private property. Appellant in this suit seeks to have the assessment declared invalid. In the complaint a number of grounds were specified but upon this appeal the only point urged is that the city was without authority to levy an assessment to pay for damages caused to private prop-

erty by reason of the improvement, inasmuch as no such power is conferred upon it by the city charter. The ordinances purported to be passed and the proceedings for the improvement taken in accordance with the Improvement Act of 1913 (Stats. 1913, p. 954; amended Stats. 1915, p. 1217; amended Stats. 1917, p. 970).

The Improvement Act of 1913 authorizes the legislative body of any city to improve its streets and to assess the property benefited thereby for the costs thereof and it expressly provides for the compensation of property owners for damage resulting to their property by reason of the improvement. Therefore, the only question presented here is whether the city could order the work done and levy the assessment under a legislative enactment other than the city charter, it being contended by appellant that the charter prohibited the levying of an assessment by the city for the purpose stated.

It was held in *Hayes* v. *Handley*, 182 Cal. 273 [187 Pac. 952], a case arising out of the same improvement as the one at bar, that the city might go outside the city charter and levy a special assessment for the improvement under the authority of the Improvement Act of 1913, *supra*. The court there held that (182 Cal. 281 [187 Pac. 955]) : "It is nevertheless true that the legislative body of the city has power to adopt any state law applicable to its municipal affairs and that in the matter of providing for defraying the expense of the proposed work of construction that was effectively done by the ordinance of intention and the ordinance ordering the work to be done."

Appellant argues, however, that that case is not pertinent here, in that the charter of Los Angeles positively forbids the levying of an assessment for the particular purpose under consideration. The constitution provides that "Cities . . . heretofore organized by authority of this constitution, may amend their charters in the manner authorized by this constitution so as to become . . . empowered hereunder, to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws." (Art. XI, sec. 6.) In the charter of the city of Los Angeles it is provided that "The

city . . . shall have the right and power: . . . To provide for . . . the improvement . . . of streets . . . and to . . . levy . . . assessments . . . to pay the cost of any such improvements.'' (Art. I, sec. 2, subd. 19a, Stats. 1917, p. 1691.) It is appellant's contention that the express grant of authority to levy assessments ''to pay the cost of any such improvement'' excludes the power to levy the assessment for any other purpose. *Harward* v. *St. Clair Drainage Co.,* 51 Ill. 130, is cited in support of this contention. In that case it was held that a provision of the state constitution that ''the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes'' was a limitation which prohibited the legislature from granting the power of local taxation to private individuals or others than the local or corporate authorities. It is claimed the provision of the charter quoted is likewise a limitation on the power of the city. Appellant in addition asserts the city is shown not to have had the authority claimed for it by the fact that in 1919 the charter was amended and the city expressly authorized to exercise any rights, powers, and privileges granted by general laws (Stats. 1919, pp. 1430, 1432), and to levy assessments to pay for damage caused to private property by improvement work.

[1] A complete answer to this argument is that all the proceedings for the work of constructing the tunnel were carried out under the authority of the Improvement Act of 1913, *supra,* which act authorized the levying of an assessment for the purpose in question. It was clearly decided in *Hayes* v. *Handley, supra,* that the city had the right to proceed under that act. The right to proceed under the act included authority to take all the steps therein provided and to levy assessments for all the purposes therein designated. The city thus having the right to avail itself of the powers expressly granted by the Improvement Act of 1913, *supra,* the failure to mention in the charter some power granted by the act cannot be held to constitute a denial of that power to the city or a limitation upon its right to do any of the things authorized by the statute. In this situation the fact that the charter was subsequently amended to confer on the city power to exercise authority

theretofore conferred only by state law does not prove that the city was limited to the express terms of its charter.

The judgment is affirmed.

Lennon, J., Waste, J., Myers, J., Seawell, J., Wilbur, C. J., and Kerrigan, J., concurred.

Rehearing denied.

All the Justices present concurred.