[L. A. No. 8724. In Bank.—March 24, 1926.]

THE O. T. JOHNSON CORPORATION (a Corporation) et al., Respondents, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

[1] Street Law—Street Opening Act of 1903—Proceeding in Invitum—Compliance With Statute.—A proceeding under the Street Opening Act of 1903 (Stats. 1903, p. 376), to open, widen, and extend a city street at the expense of the property owners within the district to be benefited is *in invitum;* and in such a proceeding a property owner is entitled to an accurate compliance with those specific requirements of the statute which the legislature deems important to safeguard his interests.

[2] Id.—Ordinance of Intention—Description of Work—Jurisdictional Requirements.—Under said act, an ordinance of intention

---

1. See 19 Cal. Jur. 166.
2. See 19 Cal. Jur. 214.

"briefly describing the improvement proposed" with reasonable certainty, so that a person of ordinary understanding may know what is proposed to be done, is essential to jurisdiction of the council to order the improvement; and the description of the improvement must not be so ambiguous as to be misleading.

[3] Id.—Jurisdiction to Order Work—Proper Ordinance—Failure to Post Notices.—Under section 3 of the Street Opening Act of 1903, as amended in 1921 (Stats. 1921, p. 567), the failure of the board of public works to post the notices no longer affects the jurisdiction of the council to order the work, but the passage of a proper ordinance of intention and the publication of a sufficient notice of public work are steps necessary to confer jurisdiction.

[4] Id. — Failure to Describe Work — Insufficient Ordinance and Notice.—Where the description employed in an ordinance of intention under the Street Opening Act of 1903 incorrectly designates the streets affected and also fails to describe the opening of a proposed new street, there is not only a failure of description, but a misdescription of the proposed improvement, and the ordinance of intention and the notice of public work (wherein the same description is used) are fatally misleading and defective.

[5] Id.—"To Extend" Street—Opening of New Street.—Assuming that, in a comprehensive and unrestricted sense, the phrase "to extend" means to enlarge or to expand in any direction, when used in conjunction with the phrases "to open" and "to widen" a street they can only mean a prolongation of the street from one of its termini and in the same general direction and may not thus be used to convey the idea of opening an entirely new street paralleling for some 1800 feet a street officially named and described as the one to be opened, widened, and extended.

[6] Id. — Misleading Description — Insufficient Notice.—When the description is so defective as to be misleading, the notice of the improvement is insufficient and the assessment proceedings will not be sustained.

[7] Id.—Notice of Public Work—Reference to Ordinance of Intention—Failure to Describe Work.—The provision of section 3 of the Street Opening Act of 1903 for a reference in the notice of public work to the ordinance of intention "for further particulars" contemplates that the brief description shall contain *some* particulars of the essential parts of the proposed improvement, in order that the property owner be charged by reference with the further particulars; and a notice which contains no hint or intimation in the brief description of the proposed improvement of a new and

---

3.   See 19 Cal. Jur. 215,

unnamed street is not sufficient merely because it contains a reference to the ordinance of intention for further particulars and such ordinance contains a correct description by courses and distances of the proposed improvement.

[8] Id.—Cost of Work—Payment of Portion by City—Failure to State Percentage.—Where the city is to pay a portion of the cost of the improvement to be made under the Street Opening Act of 1903, the property owners are entitled to know the percentage, that the frontage which is given the right of protest under section 4 may be certain of ascertainment, and this requirement is jurisdictional; and an ordinance of intention which does not declare the amount of the city's proportion of the cost of the improvement in definite terms of percentage, but only "that percentage which the sum of $1,500,000 bears to the entire expense of said improvement," does not conform to the statute.

[9] Id. — Payment by City — Failure to State Fund. — The Street Opening Act of 1903 requires that, when the city is to pay a portion of the cost of the improvement, the name of the fund from which the payment is to be made be stated in the ordinance of intention, and this statutory requirement is jurisdictional; and it is not sufficient that the ordinance merely state that the city's portion shall be paid "out of such fund as the city council may designate."

[10] Id. — Payment of Portion of Cost by City — Sufficiency of Title of Act.—The amendment of the Street Opening Act of 1903 authorizing the municipality to pay a portion of the cost of improvement is well within the title of the act, which does not assume to be an index of the particular matters embraced in the act but in general terms provides for the condemnation of property necessary or convenient for the laying out, opening, widening, and extending of public streets within municipalities.

[11] Id.—Division of Cost Between Public and Property Owners—Determination of Legislature—Fraud.—The opening, widening, and extending of a public street within a city is a matter of general public interest and concern, and the question of the extent of such general public interest and concern is primarily one of legislative determination and, in the absence of fraud, such determination may not be inquired into by the court.

[12] Id.—Declaration to Pay Part of Cost—Incurring of Indebtedness—Constitutional Law.—An order and declaration of the council, in an ordinance of intention under the Street Opening Act of 1903, to pay a proportionate part of the cost of the improvement does not constitute the incurring of an indebtedness as contemplated by section 18 of article XI of the constitution.

[13] Id.—Municipal Affairs—Entitling of Ordinances—Code Provision Inapplicable.—Conceding that the provision of section 4459 of the Political Code that official advertising, when published, must be preceded by words "describing or expressing in general terms the purport or character of the notice intended to be given," requires that ordinances of boards of supervisors and of cities operating under general law be entitled, the manner of enacting city ordinances is a municipal affair and, therefore, the requirement of said code section cannot be imposed upon a city operating under a freeholders' charter.

[14] Id.—Effective Date of Ordinance—Time to File Protests.—An ordinance of intention under the Street Opening Act of 1903 falls within the excepted classification under section 198g of the charter of the City of Los Angeles, and the thirty-day postponement provision has no effect upon it; and, therefore, the time within which protests may be filed expires thirty days after the publication of such an ordinance adopted by the council of said city.

[15] Id. — Apportionment of Benefits — Notice and Hearing — Due Process.—The Street Opening Act of 1903 provides for all the notice and opportunity to be heard on the question of the respective portions of the general public and the local benefits essential to the requirements of due process.

(1) 31 C. J., p. 208, n. 80, p. 333, n. 76; 28 Cyc., p. 971, n. 53, 55, p. 979, n. 40. (2) 28 Cyc., p. 978, n. 33, p. 979, n. 40. (3) 28 Cyc., p. 978, n. 32, p. 983, n. 88. (4) 28 Cyc., p. 978, n. 33. (5) 28 Cyc., p. 978, n. 33. (6) 28 Cyc., p. 982, n. 63, 64. (7) 28 Cyc., p. 980, n. 49, p. 982, n. 64, 69. (8) 28 Cyc., p. 942, n. 21. (9) 28 Cyc., p. 978, n. 34 New. (10) 36 Cyc., p. 1018, n. 79, 81, p. 1039, n. 77. (11) 28 Cyc., p. 978, n. 35 New, p. 1016, n. 64, p. 1536, n. 64 New. (12) 28 Cyc., p. 1548, n. 27 New. (13) 28 Cyc., p. 291, n. 69, p. 378, n. 87. (14) 38 Cyc., p. 990, n. 61. (15) 12 C. J., p. 1261, n. 89, p. 1263, n. 9.

APPEAL from a judgment of the Superior Court of Los Angeles County. Hartley Shaw, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jess E. Stephens, City Attorney and Lucius P. Green, Assistant City Attorney, for Appellants.

E. R. Young and C. E. Spencer for Respondents.

13. See 18 Cal. Jur. 784.
14. See 18 Cal. Jur. 922.

SHENK, J.—This action was brought to enjoin the defendants the City of Los Angeles and certain of its officers from expending any money in furtherance of a proceeding initiated under the Street Opening Act of 1903 (Stats. 1903, p. 376), including the cost of the prosecution of a pending action in condemnation. A general demurrer to the complaint was overruled. The defendants stood on their demurrer and declined to answer, whereupon a judgment of injunction was entered as prayed. From this judgment the defendants appeal.

On January 22, 1923, the council of said city adopted an ordinance entitled: "An ordinance declaring the intention of the city of Los Angeles to order the opening, widening and extending of Mines avenue between the easterly boundary of the city of Los Angeles and a point distant three hundred feet, more or less, westerly of Lorena street, and Ninth street between Lorena street and San Julian street, and of Tenth street between San Pedro street and Burck place, and of Country Club drive between Burck place and a point one hundred twenty-five feet westerly from said Burck place, in the city of Los Angeles, county of Los Angeles, state of California." This ordinance was approved by the mayor and published on February 1, 1923. In and by said ordinance it was ordained in section 1 thereof that the public interest and convenience required, and it was the intention of the council to order, that the streets therein named (described precisely as set forth in the title) be opened, widened, and extended. Section 2 described more particularly the lands to be taken. This description is a technical description by courses and distances of the exterior boundaries of the proposed improvement, covering eighteen pages of printed transcript. A series of maps prepared by the city engineer in August, 1923, for use in connection with the condemnation proceeding, was submitted at the oral argument for our enlightenment upon this appeal. From these maps, but not from the technical description in the ordinance, it is ascertained that the proposed improvement contemplates a street of uniform width extending from the easterly to the westerly boundaries of the city. Section 3 of the ordinance contains a description of the assessment district by courses and distances, covering forty pages of printed transcript.

Section 4, among other things, directs the board of public works to post notices of the improvement as required by law. Section 5 ordains that improvement bonds may issue to represent assessments as provided by the Improvement Bond Act of April 27, °1911. Section 6 provides as follows: "It is further ordered and declared by said City Council of the city of Los Angeles that a percentage of the expense of said improvement, in section 1 of this ordinance described, to-wit: That percentage which the sum of $1,500,000 bears to the entire expense of said improvement shall be paid by the city of Los Angeles out of such fund as said City Council may designate."

Thereafter, on February 2 and 5, 1923, the board of public works caused notices of public work to be posted. These notices described the proposed improvement precisely as described in the title of the ordinance of intention. The same form of notice was published in the official newspaper on February 7 and 8, 1923.

Within thirty days after March 4, 1923, the alleged effective date of the ordinance of intention, written protests against the proposed improvement were filed. The council heard protests filed on and prior to March 9, 1923, but refused to hear or consider protests filed after that date.

Thereafter the council on June 28, 1923, adopted the final ordinance ordering the opening, widening, and extending of said streets, describing the same in the identical language used in the title and in section 1 of the ordinance of intention and in the notices of public work as posted and published. The city attorney then instituted an action in the superior court to condemn the lands alleged to be necessary for the improvement claimed by the city to have been authorized by the proceedings preliminary thereto, but the said action has not proceeded to judgment.

The plaintiffs are the owners of lands within the assessment district which are subject to assessment on account of said improvement if the same be carried to completion as proposed.

Because of the demurrer and the refusal of the defendants to answer, all of the material allegations of the complaint are of course admitted to be true. From these allegations and the record before us it appears that Mines Avenue is a public street extending from the easterly boundary

of the city in a general westerly direction to a point where it meets the easterly terminus of Ninth Street, approximately 150 feet westerly from Lorena Street, which is an intersecting north and south street; that Ninth Street extends westerly from its easterly terminus for a distance of about eight miles; that Tenth Street extends from its easterly terminus at its intersection with Central Avenue in a general westerly direction and approximately parallel with Ninth Street a distance of about 2,600 feet to its intersection with San Pedro Street, which is a north and south street intersecting both Ninth and Tenth Streets; that from San Pedro Street to San Julian Street, a distance of one block, Tenth Street is not open; that Tenth Street from San Julian Street to Main Street is, for a distance of some 1,800 feet, an open public street approximately paralleling Ninth Street between the same intersecting streets; that both Ninth and Tenth Streets for many years have been open, improved, and used public streets of the city and commonly known by their respective names; that it is not contemplated in the proposed proceeding to open, widen or extend Tenth Street between San Pedro and Main Streets, but the proposed improvement contemplates the opening of an entirely new street through private improved property diagonally from the intersection of Ninth and San Pedro Streets to the intersection of Tenth and Main Streets. The situation may be better understood by reference to the accompanying diagram.

In section 2 of the Street Opening Act of 1903 as amended (Stats. 1921, p. 566) it is provided that before ordering any improvement therein authorized the city council shall pass an ordinance declaring its intention so to do, which ordinance "shall briefly describe the improvement" and the land necessary or convenient to be taken therefor. Section 3 requires that a "notice of public work" shall be posted along the line of the proposed improvement and be published by an insertion in a newspaper designated by

the city council for that purpose, which notice shall "briefly describe the improvement proposed, and refer to said ordinance of intention for a description of the assessment district and for further particulars."

The respondents first attack the proceedings on the ground that the improvement actually intended and sought to be carried out by the condemnation proceeding and the improvement described in the ordinance of intention and notices of public work are fatally at variance, in that the improvement described in the ordinance of intention and notices includes the opening and widening of Tenth Street between San Pedro Street and Main Street, and the improvement as actually attempted to be carried out between San Pedro Street and Main Street consists of the opening of an entirely new and unnamed street between Ninth and San Pedro Streets and Tenth and Main Streets, and that therefore the property owners within the assessment district were not charged with notice of the proposed improvement as required by law. We think this contention must be sustained. [1] The proceeding is *in invitum*. It is conceded by counsel for appellants that in such a proceeding the property owner "is entitled to an accurate compliance with those specific requirements of the statute which the legislature deems important to safeguard his interests. These are the mandatory and jurisdictional provisions of the statute." This statement is in line with the well-established rule that the requirements of the statute essential to jurisdiction must be complied with. (*Flynn* v. *Chiappari*, 191 Cal. 139 [215 Pac. 682]; 19 Cal. Jur. 166–168, and cases cited.) [2] An ordinance of intention properly affording notice is essential to the jurisdiction of the council to order the improvement. (*Pacific Paving Co.* v. *Verso*, 12 Cal. App. 362 [107 Pac. 590].) The act requires that the ordinance "briefly describe the improvement proposed," and it has been held that the description of the work as required by the statute is a jurisdictional prerequisite. (*Fay* v. *Reed*, 128 Cal. 357 [60 Pac. 927]; 19 Cal. Jur. 237, and cases cited.) "Unquestionably the giving of the notice required by the act is one of the steps necessary to confer upon the council jurisdiction to order the work done. 'Proceedings for street assessments, being *in invitum*, must, in order to charge the property of the owner, be based

upon a compliance with the provisions of the statute au-
thorizing the work, in so far, at least, as those provisions
have to do with the giving of notice or other steps pre-
cedent to the jurisdiction of the board to order the work
done.'" (*Ferri* v. *City of Long Beach,* 176 Cal. 645 [169
Pac. 385].) The ordinance of intention must briefly de-
scribe the improvement proposed with reasonable certainty
so that a person of ordinary understanding may know
what is proposed to be done (19 Cal. Jur. 239, and cases
cited), and the description of the improvement must not
be so ambiguous as to be misleading. (*Piedmont Paving
Co.* v. *Allman,* 136 Cal. 88 [68 Pac. 493].) [3] Because
of the concluding paragraph of section 3 of the act as
amended in 1921 (Stats. 1921, p. 567) the failure of the
board of public works to post the notices no longer affects
the jurisdiction of the council to order the work, but the
passage of a proper ordinance of intention and the publica-
tion of a sufficient notice of public work are, under the
statute, steps necessary to confer jurisdiction. (*Ferri* v.
*City of Long Beach, supra;* 19 Cal. Jur. 214.)

[4] With the foregoing considerations in mind the ques-
tion is: Does the description in the ordinance of intention
and in the notice of public work as published meet the re-
quirements of the law? It is to be observed that said de-
scription specifies Tenth Street between San Pedro Street
and Burck Place as one of the streets to be opened, widened
and extended. Reference to the map discloses that Burck
Place is many blocks west of Main Street. It also appears
that Tenth Street approaches and extends to San Pedro
Street from the east and proceeds westerly from San Ju-
lian Street. Between San Pedro Street and San Julian
Street Tenth Street is not open. When the ordinance of
intention proposed to open, widen, and extend Tenth Street
from San Pedro Street to a point westerly from Main Street
the only reasonable inference or conclusion to be drawn
from the language employed in the description was that it
was contemplated to open Tenth Street from the point of
its intersection with San Pedro Street westerly therefrom
where at the time it was not then open, and thus provide
a through street. But instead of carrying out the improve-
ment as so described the appellants admittedly propose to
open an entirely new and unnamed street from the inter-

section of Ninth and San Pedro Streets to Tenth and Main Streets. It is conceded by the appellants that "the names of streets affected by the improvement must be correctly given, and none other than the official name may be employed, for in contemplation of law a street has but one name,—its official name." (*Peck* v. *Stassforth,* 156 Cal. 201 [103 Pac. 918].) It appears without question that Tenth Street is officially named as such easterly from San Pedro Street and westerly from San Julian Street. Tenth Street westerly from its intersection with San Pedro Street was definitely and specifically named as one of the streets affected and to be improved, but that portion of Tenth Street between San Pedro Street and Main Street, by the admission of the appellants, is not to be opened, widened, extended, or otherwise improved, and a new street some 1,800 feet in length and not referred to in the brief description of the proposed improvement is to be opened through private improved property. As to the improvement attempted to be carried out, the description employed incorrectly designates the streets affected and also fails to describe the opening of the proposed new street. There is, therefore, not only a failure of description, but a misdescription of the proposed improvement, and the ordinance of intention and the notice of public work were fatally misleading and defective.

[5] It is insisted by the appellants that the opening of the new street from Ninth and San Pedro Streets to Tenth and Main Streets should, considering the improvement as a whole, be deemed an extension of Tenth Street from San Pedro Street to Burck Place. It is urged and it may be assumed that, in a comprehensive and unrestricted sense, the phrase "to extend" means to enlarge or to expand in any direction. But when used in conjunction with the phrases "to open" and "to widen" it can only mean a prolongation of the street from one of its termini and in its same general direction. (*Mayor of Monroe* v. *Ouachita Parish,* 47 La. Ann. 1060 [17 South. 498]; *Owen* v. *Chicago,* 53 Ill. 95.) Certainly it may not be said that the phrase "to extend" may thus be used to convey the idea of opening an entirely new street paralleling for some 1,800 feet a street officially named and described as the one to be opened, widened and extended. [6] It has been held

that, when the description is so defective as to be misleading. the notice of the improvement is insufficient and the assessment proceedings will not be sustained (*McNutt* v. *City of Los Angeles*, 187 Cal. 245 [201 Pac. 592]; *Park* v. *Pacific Fire Extinguisher Co.*, 37 Cal. App. 112 [173 Pac. 615]; *Sanger* v. *Chicago*, 169 Ill. 286 [48 N. E. 309]; *Fry* v. *Salem*, 84 Or. 184 [164 Pac. 715].)

Appellants again insist that, in view of the magnitude of the project, a substantial compliance with the statute has taken place. The record may not be so construed. If, under the notice given in this case, the city may not only fail to improve the street noticed for improvement for a distance of 1,800 feet, but also open a new street parallel therewith for that distance and not noticed for improvement, it might be urged with equal assurance that a new and unnamed and unmentioned street could be opened paralleling the street described in the notice for a mile or more—a proposition not possible of approbation under our street laws.

[7] It is also insisted by the appellants that, as section 3 of the act provides for a reference in the notice of public work to the ordinance of intention for a description of the assessment district "and for further particulars," and as the notice in this case contained such reference and as the eighteen-page description by courses and distances in section 2 of the ordinance of intention was, from an engineering standpoint, a correct description of the land to be taken, therefore the notice was sufficient. But the phrase "further particulars" contemplates that the brief description contains *some* particulars of the essential parts of the proposed improvement, in order that the property owner be charged by reference with the *further* particulars (*While* v. *Harris*, 116 Cal. 470 [48 Pac. 382]), and there is no hint or intimation in the brief description of the proposed improvement of the new and unnamed street. Our conclusion on this point would not require that the brief description be greatly extended. It would seem to be a simple matter to have included therein a reference to "a new street from Ninth and San Pedro streets to Tenth and Main streets" with, of course, the omission of any reference to Tenth Street between San Pedro and Main Streets, if, as is admitted here, that portion of Tenth Street was not to be improved.

A similar defective and omitted description is alleged by respondents to have occurred as to the proposed opening of a new and unnamed street approximately 900 feet in length westerly from Lake Street to Hoover Street, whereas Tenth Street westerly from Lake Street and running in the same general direction as the proposed new street and being easterly from Burck Place is not to be improved. Respondents likewise question the right of the city to open a new street, approximately 1,400 feet in length, from Crenshaw Boulevard westerly to Burck Place under a notice to open, widen, and extend Tenth Street, when, as a matter of fact, Tenth Street is and was at the time of said notice, a public street known as such by the official name of Tenth Street and running in the same general direction between the said termini and is not to be improved. Other defects in the description are alleged but need not be noted. But from those referred to, it will be seen that, under a notice to open, widen, and extend *Tenth Street between San Pedro Street and Burck Place,* the respondents are attempting to open about four-fifths, of a mile of new street through private property when the same territory is traversed by a street officially known as Tenth Street and running in the same general direction and which is not to be improved. Further argument should not be required to support the conclusion that such a proceeding is contrary to law.

The case of *McGarry* v. *Ellis,* 54 Cal. App. 622 [202 Pac. 463], cited and relied on by appellants, does not sustain their position. In that case, the language of the improvement act of 1911 [Stats. 1911, p. 730] was involved wherein the notice was required "to briefly describe the work or the assessment district or both" and to refer to the ordinance of intention for further particulars. The notice in that case described the work and also the assessment district as including the entire city, but did not state that certain lots were excepted from the district. Said notice was properly held sufficient because the property owner was given notice that his property was included in the district and the omission to state that certain lots were excepted was declared immaterial.

[8] A serious objection is also urged by the respondents to the sufficiency under the statute of the provisions of section 6 of the ordinance of intention. The city had the

option to proceed under the Street Opening Act of 1903 (*Hayes* v. *Handley,* 182 Cal. 273 [187 Pac. 952]; *Barber* v. *City of Los Angeles,* 191 Cal. 253 [215 Pac. 897]) and when it elected to proceed thereunder it was bound by the terms of the act (*Osburn* v. *Stone,* 170 Cal. 480 [150 Pac. 367]; 19 Cal. Jur. 410, and cases cited). Section 2 of that act as amended in 1921 (Stats. 1921, p. 566) appears to contain the only authority for the city to pay a portion of the cost of an assessment proceeding taken under the act. It is there provided: "Said city council may, in its discretion, order and declare that the whole or any percentage of the expense of said improvement be paid out of the treasury of the municipality from such fund as the council may designate, in which case it shall be so stated in said ordinance of intention." It is the contention of the respondents that as neither the percentage of the cost of the improvement to be borne by the city nor the fund from which such expenditure was to be made were ordered, declared, or designated in the ordinance of intention, the failure to follow the terms of the act in those respects resulted in a lack of jurisdiction to proceed. Section 4 of the act (Stats. 1913, p. 431) provides that protests against the improvement on the part of the owners of a majority of the frontage of the property fronting on the streets within the assessment district shall effectually bar all further proceedings under said ordinance of intention. Said section further provides: "For the purpose of passing upon and determining the sufficiency of such protests in cases where by a resolution of intention it is declared that the city shall pay a percentage of the expense of the improvement, the city shall be deemed to be the owner of frontage within the assessment district bearing the same proportion to the whole frontage therein as the proportion of the expense which it is to pay, and the actual frontage of property within such district shall be increased by the addition of such amount as is necessary to produce said result, and the amount of frontage as so increased shall be the total frontage to be used in determining whether a protest is signed by the owners of a majority of the frontage of the property fronting on streets or parts of streets within said assessment district." It will be noted that in section 6 of said ordinance, the city did not declare the amount of the city's

proportion of the cost of the improvement in definite terms of percentage, but only "that percentage which the sum of $1,-500,000 bears to the entire expense of said improvement." From this declaration it is impossible to determine whether the amount to be paid by the city is five, ten, fifty, or any other percentage of the entire cost of the improvement. In the absence of a definite percentage of the entire cost to be borne by the city, it is likewise impossible to determine to what extent the frontage in the district is to be enlarged for the purpose of ascertaining protest frontage. It is no answer to this contention to say that, if a definite percentage be not declared, there would be no consequent enlargement of the frontage and no prejudice to the protestants. In order that the statute be given effect, there must be an enlargement of the frontage in proportion to the percentage of the contribution of the city. Unless that percentage be definite there is no way of ascertaining the total frontage and therefore no basis for determining the sufficiency of protests and no basis on which the council may legally act on protests. The property owners are entitled to have the frontage which is given the right of protest made certain of ascertainment and the statute in such matters must be followed (*Dehail* v. *Morford,* 95 Cal. 457 [30 Pac. 593]; *Beck* v. *Ransome-Crummey Co.,* 42 Cal. App. 674 [184 Pac. 431]).

[9] Respondents contend that there was also a fatal noncompliance with the statute when the ordinance of intention failed to designate the fund from which the city's portion of the expense was to be paid. Appellants in reply state that it is no concern of the property owner from what fund the city's portion is to be paid and that the language of the act is reasonably susceptible of the construction that the ordinance shall state merely that the city's portion shall be paid "out of such fund as the city council may designate." We think the proper construction of the language of the act requires that the fund be designated in the ordinance of intention and that such designation is for the benefit of the property owner and jurisdictional. The appellants concede the correctness of the rule laid down in *Dehail* v. *Morford, supra,* wherein this court said that "every requirement of the statute which has a semblance of benefit to the owner must be observed in order to give the municipality jurisdiction in the premises." If the fund be desig-

nated as the general fund or the reserve fund or the unappropriated balance the property owner might be satisfied with the expenditure from that source as entailing no additional burden on his part, but if the fund be designated as a fund to be derived from a general bond issue to be thereafter authorized and to satisfy which his property would be subject to an additional tax, or a fund from which the payment of the city's portion could for some reason not legally be made, he would know or be charged with knowledge of the additional burden to be borne by him and be governed accordingly in deciding whether or not he would protest.  We therefore hold that the statute requires that when the city is to pay a portion of the cost of the improvement, a definite percentage of the total cost and the name of the fund from which the payment is to be made be stated in the ordinance of intention, and that these statutory requirements are jurisdictional.

[10]  The respondents attack the said proceeding on additional grounds which are treated rather extensively in the briefs.  Some consideration of these further objections is deemed essential to a proper disposition of the case.  It is insisted by them that the amendment to the Street Opening Act of 1903 authorizing the municipality to pay a portion of the cost of improvement is void for the reason, so it is claimed, that the title of the act does not embrace the subject of the amendment and is therefore legislation contrary to the provision of section 24 of article IV of the constitution.  *Estate of Melone,* 141 Cal. 331 [74 Pac. 991], is relied upon.  In that case the specific enumeration of subjects in the title of the act in question was held to be exclusive.  Here the title is general and does not assume to be an index of the particular matters embraced in the act. In general terms it provides for the condemnation of property necessary or convenient for the laying out, opening, widening, and extending of public streets within municipalities.  The constitutional provisions requiring the subject of the act to be embraced in its title must be liberally construed and "all that is required to be contained therein in order to meet the constitutional requirements is a reasonably intelligent reference to the subject to which the legislation is to be addressed" (*Estate of Wellings,* 192 Cal. 506, 519 [221 Pac. 628] ; *McClure* v. *Riley, ante,* p. 23 [243 Pac.

429]). When so construed it is obvious that the payment by the city of a portion of the cost of the improvement might be properly provided for under the designation in the title of the general purposes of the act (*Davies* v. *City of Los Angeles,* 86 Cal. 37 [24 Pac. 771]).

[11] Again, it is contended that the attempted appropriation of $1,500,000 by the city constitutes a gift of public money contrary to section 31 of article IV of the constitution. It is argued that, inasmuch as the city council has declared that the property within the assessment district is to be benefited by the proposed improvement, it must therefore follow that the improvement is of benefit to the property in the district and is of no benefit to the general public over and above that ordinarily received by the general public from all streets. It is further argued that, as the ordinance of intention provides that the property in the district shall be assessed to pay the cost of the improvement, such declaration means the payment of the whole cost. We think the declaration referred to must be read in connection with the provisions of section 6 of the same ordinance, which provides for the payment of a portion of the cost of the improvement. It must be assumed that the opening, widening, and extending of a public street within a city is a matter of general public interest and concern (*Sinton* v. *Ashbury,* 41 Cal. 528) and the question of the extent of such general public interest and concern is primarily one of legislative determination, and in the absence of fraud, and none is here suggested, such determination may not be inquired into (*City of Oakland* v. *Garrison,* 194 Cal. 298 [228 Pac. 433]).

[12] It is alleged in the complaint that at the time of the adoption of the ordinance of intention there was not, nor was there at any time during the fiscal year ending June 30, 1923, in the city treasury of Los Angeles any sum or amount sufficient to enable the city to pay the $1,500,000 proposed to be paid, and that the electors had not authorized the said indebtedness. As this allegation was admitted it is insisted that the indebtedness thus attempted to be incurred was unauthorized and contrary" to the provisions of section 18 of article XI of the constitution, which provides that no city shall incur any indebtedness or liability in any year exceeding the income and revenue provided for

such year without the consent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose. We think the order and declaration of the council as embodied in section 6 of said ordinance do not constitute the incurring of an indebtedness as contemplated by the section of the constitution referred to. The mere declaration of a purpose is there evidenced which does not amount to a covenant which could then be enforced. The proceedings may be abandoned or the improvement may be delayed for many years. Notwithstanding the facts as alleged and as admitted, such a state of the city's finances may not be in existence at the time the appropriation is actually to be made.

[13] It is contended that the ordinance of intention was not properly entitled as required by section 4459 of the Political Code. It is therein provided that official advertising, when published, must be preceded by words "describing or expressing in general terms the purport or character of the notice intended to be given." This section was added to the Political Code in 1903. In 1908 it was said by this court in *Ex parte Young,* 154 Cal. 317 [22 L. R. A. (N. S.) 330, 97 Pac. 822], that there was at that time no statute which required ordinances of boards of supervisors to be entitled. In the same year the district court of appeal made the same declaration in *Ex parte Yung,* 7 Cal. App. 440 [94 Pac. 594]. It is true that in each of those cases *Ex parte Haskell,* 112 Cal. 412 [32 L. R. A. 527, 44 Pac. 725], decided in 1896, was cited as authority for the declaration, but then again, *In re Johnson,* 47 Cal. App. 465 [190 Pac. 852], decided in May, 1920, it was said that a title was not an indispensable part of a city ordinance. The section of the Political Code referred to does not appear to have been considered in any of those decisions, but it is significant that since their rendition the section has not been amended. Moreover, if that section be deemed to require that ordinances of boards of supervisors and of cities operating under general law be entitled, it would not necessarily follow that they would impose a like requirement on ordinances of a city operating under a freeholders' charter. The manner of enacting city ordinances is a municipal affair. (*In re Pfahler,* 150 Cal. 71 [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270]; *Morton* v. *Broderick,*

118 Cal. 474 [50 Pac. 644].) The charter of the city of Los Angeles at the time of the passage of the ordinance of intention contained provisions relating to the enactment of ordinances, and although it does not appear that there was then any regulation that ordinances be entitled or that they need not be entitled, it is clear that since the amendment in 1914 of section 6 of article XI of the constitution the legislative requirement of section 4459 of the Political Code could not be imposed on the city. (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441 [166 Pac. 351]; *Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050]; 18 Cal. Jur. 784, and cases cited.)

[14] At the time of the adoption of the ordinance of intention section 198g of the city charter provided that an ordinance making or authorizing any contract should not go into effect until the expiration of thirty days from its publication, with certain exceptions, including contracts that require the payment by the city of less than $25,000, and it is urged that the ordinance in question authorized a contract for an expenditure in excess of $25,000 and therefore was not within the exception. But said section 198g at that time also contained a provision excepting from the thirty-day restriction ''an ordinance . . . relating to . . . the opening, widening, straightening or extension of streets.'' The ordinance of intention appears to be in this excepted classification and the thirty-day postponement provision had no effect upon it. It is not disputed that if the ordinance of intention was in effect on the date of its publication, then March 9th was the last day for the filing of protests. The city council therefore proceeded correctly in refusing to consider or pass upon protests filed after that date.

[15] Finally, it is insisted that the act of 1903 does not provide for a hearing to be had on the question of the respective portions of the general public and local benefits, and therefore due process of law is not accorded the property owners on that question. Without prolonging the discussion it is sufficient to say that we think the said act provides for all the notice and opportunity to be heard essential in that connection to the requirements of due process.

From what has been said as to the failure of the appellants to observe jurisdictional requirements it necessarily follows that the demurrer was properly overruled and that the judgment should be affirmed.  It is so ordered.

Waste, C. J., Seawell, J., Richards, J., Curtis, J., Lawlor, J., and Lennon, J., concurred.