Filed 12/16/20 (unmodified opn. attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STEPHEN K. DAVIS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FRESNO UNIFIED SCHOOL DISTRICT et al.,<br><br>Defendants and Respondents. | F079811<br><br>(Super. Ct. No. 12CECG03718)<br><br>**ORDER MODIFYING OPINION**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is hereby ordered that the published opinion filed on November 24, 2020, be modified as follows:

1.    On page 3, second full paragraph, the fourth sentence beginning "In *Davis I,* based" is modified to read as follows:

In *Davis I*, based on our review of the pleadings and attached documents, we determined the purported lease-leaseback contracts "did not include a financing component for the construction of the project."

2.    The first sentence on page 4 beginning "It follows that" is modified to read as follows:

It follows that Davis may pursue a taxpayer's action seeking the remedy of disgorgement.

3.    On page 4, line two, add the word "See" before the citation to *San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 737.

4.      On page 5, add the following text to the end of footnote 2:

The basic principle that simply calling an instrument a lease does not make it a lease is applied in other areas of the law as well.  (See e.g., Cal. U. Com. Code, § 1203, subd. (a) [a transaction in the form of a lease may create either a lease or a security interest; which one was created "is determined by the facts of each case"]; *Rice's Toyota World, Inc. v. Commissioner of Internal Revenue* (4th Cir. 1985) 752 F.2d 89 [sale and leaseback were, for tax purposes, a sham].)

5.      On page 7, the text of footnote 4 is deleted and the following text is inserted in its place:

As noted in *Davis I*, the FAC alleged "that Fresno Unified did not occupy or use the newly constructed facilities during the term of the Facilities Lease." (*Davis I*, *supra*, 237 Cal.App.4th at p. 272.)  The petitions for rehearing filed by Fresno Unified and Contractor assert this allegation is not true.  For purposes of resolving the motion for judgment on the pleadings, we have assumed the allegation is true.  The questions of fact about the use and the occupancy of the facilities are open issues on remand.

6.      On page 14, footnote 9, in the sentence beginning "Our interpretation" the two words "parol" are changed to "extrinsic."

7.      On page 14, the following sentence is added to the end of footnote 9:

Nothing in this opinion requires or prohibits the consideration of extrinsic evidence in the final interpretation of the Construction Contracts.

8.      Beginning on page 30, the entire text of footnote 13 is deleted and the following text is inserted in its place:

Based on the Supreme Court's statutory interpretation, Davis has conceded that his standing to assert a conflict of interest claim alleging a violation of Government Code section 1090 cannot be based on Government Code section 1092.  Consequently, the issue presented is whether Davis has standing as a taxpayer to pursue his common law and Government Code section 1090 conflict of interest claims.  As described below, we conclude Davis has standing under section 526a to pursue these claims.  A contrary interpretation of section 526a—that is, one that allows only the government entity to pursue the conflict of interest claims—would insulate too many contracts obtained in violation of conflict of interest principles from

2.

scrutiny and, in effect, allow the entity and the contracting person to conspire to violate conflict of interest law.

9.      On page 34, the following text is added to the end of footnote 15:

The statutory interpretation of Education Code section 17406 adopted in *Davis I* is now law of the case, and we decline the invitation in Fresno Unified's petition for rehearing to conclude that interpretation was a material mistake of law.  (See generally, *Allen v. California Mutual Bldg. & Loan Assn.* (1943) 22 Cal.2d 474, 481–482.)

10.      On page 34, the last two sentences of the paragraph (after the reference to footnote 15) are deleted and the following sentences are inserted in its place:

In short, we interpreted the Construction Contracts as being ordinary construction contracts with progress payments (not true leases) that did not provide Fresno Unified with any financing—that is, the contracts did not spread Fresno Unified's obligation to pay for the new construction over a significant amount of time.  The existence of a standard 5 percent retention does not establish, as a matter of law, that Contractor provided a financing component to Fresno Unified under the Construction Contracts.  Furthermore, Fresno Unified's payment of its obligations under the Construction Contracts with proceeds obtained from the sale bonds shows the source of financing was the bonds and Contractor was not a source of financing for the project.  The use of bond funds does not support the conclusion that the Construction Contracts are in the nature of, or are *directly* related to, a public agency's bonds or other evidences of indebtedness.  (*Kaatz*, *supra*, 143 Cal.App.4th at pp. 40, 42.)  In *Davis I*, we also held Davis had adequately alleged the leased property was not used by the district during any portion of the lease period as required by Education Code section 17406, subdivision (a)(1).

11.      On page 37, footnote 17, the second sentence's reference to "Education Code section 17046" is changed to "Education Code section 17406."

12.      On page 37, footnote 17, the last three sentences of the footnote are deleted and replaced with the following:

We note that the amended version of Education Code section 17406 did not alter the remedies pertaining to conflict of interest claims.  All other issues pertaining to the constitutionality, validity, and application (if any) of the amendment to the facts of this case are not expressly or impliedly resolved in this opinion.

There is no change in the judgment.

Respondents' petitions for rehearing filed on December 9, 2020, and appellant's petition for rehearing filed on December 10, 2020, are hereby denied.


                                                                    FRANSON, J.

WE CONCUR:


DETJEN, Acting P.J.


PEÑA, J.

4.

Filed 11/24/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STEPHEN K. DAVIS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FRESNO UNIFIED SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | F079811 <br><br> (Super. Ct. No. 12CECG03718) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Kimberly A. Gaab, Judge.

Carlin Law Group and Kevin R. Carlin for Plaintiff and Appellant.

Lang Richert & Patch, Mark L. Creede and Stan D. Blyth for Defendant and Respondent Fresno Unified School District.

Whitney Thompson & Jeffcoach, Timothy L. Thompson and Mandy L. Jeffcoach for Defendant and Respondent Harris Construction Company, Inc.

-ooOoo-

In 2012, plaintiff Stephen Davis sued the Fresno Unified School District (Fresno Unified) and Harris Construction Co., Inc. (Contractor), alleging they entered into a $36.7 million contract for the construction of a middle school in violation of California's competitive bidding requirements, the statutory and common law rules governing conflicts of interest, and Education Code sections 17406 and 17417. Defendants filed a

demurrer and obtained a judgment of dismissal. In *Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261 (*Davis I*), we reversed the judgment and remanded for further proceedings. Based on our review of the four corners of the construction agreements and resolution of Fresno Unified's board, which were attached to Davis's pleadings, we concluded Davis properly alleged three grounds for why Education Code section 17406's exception to competitive bidding did not apply to the purported lease-leaseback contracts. First, the contracts used were not genuine leases but were, in substance, simply a traditional construction contract with progress payments. (*Davis I*, *supra,* at pp. 286, 290.) Second, the contractual arrangement "did not include a financing component for the construction of the project." (*Id.* at p. 271.) Third, the contractual arrangement "did not provide for Fresno Unified's use of the newly built facilities 'during the term of the lease' as required by [Education Code] section 17406, subdivision (a)(1)." (*Ibid*.) We also concluded California's statutory and common law rules governing conflicts of interest extended to corporate consultants and Davis alleged "facts showing Contractor, as a consultant to Fresno Unified, participated in the making of a contract in which Contractor subsequently became financially interested"—that is, Contractor participated in creating the terms and specifications of the purported lease-leaseback contracts and then became a party to those contracts. (*Ibid*.)

After remand, the further proceedings included defendants' motion for judgment on the pleadings, which argued the lawsuit had become moot because the construction was finished and the contracts terminated. The trial court agreed, concluding (1) the case was a reverse validation action under Code of Civil Procedure section 863,[1] which is an *in rem* proceeding; (2) invalidating the contracts was no longer effective relief because the contracts had been fully performed; and (3) disgorgement of monies paid to

---

[1]    All undesignated statutory references are to the Code of Civil Procedure.

Contractor was not effective relief because California law does not allow disgorgement in an *in rem* proceeding. Davis appealed. As explained below, we reverse.

First, in determining the type of action or actions Davis is pursuing, his pleading must be given a liberal yet objectively reasonable interpretation. (§ 452.) The interpretation must take account of both the allegations of fact and the relief requested. Here, all of Davis's causes of action, except for the cause of action labeled declaratory relief, requested the disgorgement of funds paid under the illegal contracts. Disgorgement is an *in personam* remedy available in a section 526a taxpayer's action, but is not available in an *in rem* reverse validation action. Consequently, we interpret Davis's pleading as containing both a reverse validation action under section 863 and a taxpayer's action under section 526a. (See *Regus v. City of Baldwin Park* (1977) 70 Cal.App.3d 968, 972 (*Regus*) [validation action and taxpayer's action are not mutually exclusive].) Thus, defendants and the trial court erroneously interpreted Davis's lawsuit as exclusively an *in rem* reverse validation action.

Second, based on our interpretation of Davis's pleading, we consider the legal question of whether California's validation statutes insulate the completed contracts between Fresno Unified and Contractor from attack in a taxpayer's action. The parties' contentions present this issue as whether the purported lease-leaseback contracts fall within the ambit of the validation statutes—more specifically, Government Code section 53511, subdivision (a), which refers to "an action to determine the validity of [a local agency's] bonds, warrants, *contracts*, obligations or evidences *of indebtedness*." (Gov. Code, § 53511, subd. (a), italics added.) The term "contracts" is narrowly construed to encompass only contracts involving financing and financial obligations. In *Davis I*, based on our review of the documents, we determined the purported lease-leaseback contracts "did not include a financing component for the construction of the project." (*Davis I*, *supra*, 237 Cal.App.4th at p. 271.) As a result, we conclude the contracts do not fall within the ambit of Government Code section 53511 and California's validation

3.

statutes. It follows that Davis may pursue a taxpayer's action and seek an order to "disgorge any profits earned … under the contract." (*San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 737 (*San Diegans*).) Disgorgement qualifies as effective relief and, therefore, the taxpayer's action part of this lawsuit is not moot.

We therefore reverse the judgment and remand for further proceedings.

## FACTS

### *Consulting Relationship*

In February 2012, Fresno Unified and Contractor entered into a preconstruction services agreement under which Contractor agreed to provide professional consulting services to Fresno Unified relating to the construction of the Rutherford B. Gaston Sr. Middle School located in southwest Fresno. A recital stated Contractor agreed to furnish preliminary design review services under the agreement, including plan and design review, value engineering, schedule preparation and other services for the project. The agreement stated Contractor would act as an independent contractor.

In May 2012, Fresno Unified and Contractor entered into a second, separate preconstruction services agreement. The second agreement stated Contractor would provide detailed plans, drawings and other documents for the ultimate fabrication and erection of steel members to be used in the construction of the project. Davis contends the second preconstruction services agreement was approved by Fresno Unified's governing board. The consulting relationship established by the two preconstruction service agreements is the basis for Davis's contention that Contractor had a relationship with Fresno Unified similar to an employee or officer and, therefore, Contractor was subject to the conflict of interest rules that barred it from having a financial interest in a contract that it participated in making.

4.

*Construction Agreements*

In September 2012, Fresno Unified's governing board adopted a resolution authorizing the execution of contracts under which Contractor would build the project described as the Rutherford B. Gaston Sr. Middle School, Phase II. The resolution stated the construction would be "a lease-leaseback project" in which (1) Fresno Unified would lease the project site, which it owned, to the Contractor, (2) Contractor would build the project on the site, and (3) Contractor would lease the improvements and the site back to Fresno Unified. The resolution stated it was in the best interest of Fresno Unified to construct the project through a lease and leaseback of the site pursuant to Education Code section 17406, which allows such arrangements without advertising for bids. The contracts between Fresno Unified and Contractor were a site lease (Site Lease) and a facilities lease (Facilities Lease; collectively, the Construction Contracts).[2] The Site Lease and the Facilities Lease were executed by Ruth F. Quinto, the deputy superintendent and chief financial officer of Fresno Unified, and Timothy J. Marsh, the president of Contractor. [3]

*Site Lease*

The Site Lease provided Fresno Unified would lease the project site to Contractor for $1.00 in rent for a period coinciding with the term of the Facilities Lease. The Site Lease also stated that title to all improvements made on the site during its term "shall vest

---

[2] In *Davis I*, we referred to the Site Lease and the Facilities Lease collectively as the "Lease-leaseback Contracts." (*Davis I*, *supra*, 237 Cal.App.4th at p. 271.) Here, we use the term "Construction Contracts" because it accurately describes the true nature of the arrangement established by the provisions in those documents. (See *Park etc. Co. v. White River L. Co.* (1894) 101 Cal. 37, 39 [calling a paper a lease does not establish it is a lease; "the contents of the paper determine its true character"].)

[3] The resolution, Site Lease and Facilities Lease were attached as exhibits A, B, and C, respectively, to Davis's initial complaint and his first amended complaint (FAC), which is the operative pleading in this appeal.

subject to the terms of the Facilities Lease." The Site Lease was the "lease" portion of the purported lease-leaseback arrangement.

*Facilities Lease*

The Facilities Lease identified Contractor as the sublessor and Fresno Unified as the sublessee. The Facilities Lease is the "leaseback" portion of the purported lease-leaseback arrangement. Under the Facilities Lease, Contractor agreed to build the project on the site in accordance with the plans and specifications approved by Fresno Unified and the "Construction Provisions" for the project contained in exhibit D to the Facilities Lease. The Construction Provisions were a detailed, 55-page construction agreement in which Contractor agreed to perform all work and provide and pay for all materials, labor, tools, equipment and utilities necessary for the proper execution and completion of the project. The guaranteed maximum price of the project was $36,702,876. The time allowed for Contractor to complete the project was 595 days from the notice to proceed.

The Facilities Lease included a provision describing Fresno Unified's obligation to pay by stating "Lease Payments shall be made for the Site and portions of the Project as construction of the Project is completed. All Lease Payments will be subject to and not exceed the Guaranteed Maximum Price set forth in the Construction Provisions." The "Schedule of Lease Payments" attached to the Facilities Lease referred to the "payments for the Project as set forth in the Construction Provisions." In turn, the Construction Provisions outlined monthly progress payments for construction services rendered each month, up to 95 percent of the total value for the work performed, with a 5 percent retention pending acceptance of the project and recordation of a notice of completion. Final payment for all the work was to be made within 35 days after Fresno Unified recorded the notice of completion.

Despite the fact that the funds paid by Fresno Unified to Contractor under the Facilities Lease were based solely on the construction services performed by Contractor, the Facilities Lease stated the lease payments constituted "the total rent[] for the Project"

6.

and were paid "for and in consideration of the right to use and occupy the Project during each month …."[4] The Facilities Lease also stated the parties "have agreed and determined that the total Lease Payments … do not exceed the fair rental value of the Project."

The Facilities Lease characterized Fresno Unified's obligation to make the lease payments as "a current expense" of Fresno Unified. It stated the lease payment "shall not in any way be construed to be a debt of [Fresno Unified] in contravention of any applicable constitutional or statutory limitation or requirement concerning the creation of indebtedness of [Fresno Unified] …. Lease Payments due hereunder shall be payable only from current funds which are budgeted and appropriated, or otherwise legally available, for the purpose of paying Lease Payments … as consideration for use of the Site during the fiscal year of [Fresno Unified] for which such funds were budgeted and appropriated …."

The Facilities Lease addressed Fresno Unified's source of funding in a paragraph labeled "Appropriation." The provision stated Fresno Unified "has appropriated that portion of the Guaranteed Maximum Price to be earned during the current fiscal year from [Fresno Unified's] current fiscal year and/or State funds to be received during [Fresno Unified's] current fiscal year, and has segregated or will segregate such funds in a separate account to be utilized solely for Lease Payments. [Fresno Unified] will do so

---

[4]    It appears Fresno Unified did not actually exercise this right to use and occupy the construction site during each (or any) month of the purported lease. In *Davis I*, we noted the FAC alleged "that Fresno Unified did not occupy or use the newly constructed facilities during the term of the Facilities Lease" (*Davis I*, *supra*, 237 Cal.App.4th at p. 272) and, consistent with Davis's allegations of fact, Fresno Unified's opening brief in that appeal "acknowledged the Facilities Lease was in effect only during the construction of the school facilities and its counsel confirmed during oral argument that a phased completion of the project was not used in this case." (*Ibid.*) Thus, Davis's allegations about use and occupancy were not contradicted by the brief or the statements of its counsel. (*Ibid.*)

for each fiscal year during which the Project is to be constructed or Lease Payments are to be made."

During the term of the Facilities Lease, Fresno Unified held title to the land and obtained title to the improvements "as construction progresse[d] and corresponding Lease Payments [we]re made to [Contractor]." The Facilities Lease stated it terminated on the completion of the project and the payment of all lease payments due the Contractor. After the lease payments were made and the lease term ended, all remaining rights, title and interest of the Contractor, if any, to the project and the site were vested in Fresno Unified.

On December 4, 2014, a notice of completion was recorded by the Fresno County Recorder. The notice of completion was executed under penalty of perjury by the purchasing manager of Fresno Unified. It stated the "work of improvement on the property hereinafter described was completed on November 13, 2014" and described the work as the construction of the middle school.

## PROCEEDINGS

In November 2012, Davis initiated this litigation by filing a verified complaint with two causes of action. The first cause of action was labeled "Reverse Validation Action Against Defendants" Fresno Unified and Contractor. The second cause of action was labeled "Taxpayer Action for Recovery of Funds Paid by [Fresno Unified] to [Contractor] on Facilities Lease." The complaint's prayer for relief was divided by cause of action. On the reverse validation action, Davis requested findings that (1) the action was properly brought under section 863 for judicial invalidation of proceedings leading up to and including the approval, execution and delivery of the Site Lease and Facilities Lease and (2) the Site Lease and Facilities Leases were illegal, void and unenforceable. On the taxpayer action, Davis requested (1) a preliminary injunction and a permanent injunction enjoining Fresno Unified from paying any further monies to Contractor on any

8.

agreement relating to the project and (2) an order directing Contractor to pay back to Fresno Unified all monies received under any agreement relating to the project.

In March 2013, Davis filed his FAC, which listed Fresno Unified, Contractor, and all persons interested in the matter of the Construction Contracts as defendants. The FAC's causes of action are (1) failure to comply with the requirements of Public Contract Code section 20110 et seq., which applied because the Construction Contracts did not create the type of lease-leaseback arrangement authorized in Education Code sections 17400 through 17429, (2) breach of fiduciary duty, (3) failure to comply with the competitive bidding requirements of Education Code section 17417 that applied because the criteria for the exception outlined in Education Code section 17406 were not satisfied, (4) statutory and common law conflicts of interest, (5) improper use of Education Code section 17400 et seq., (6) improper delegation of discretion, and (7) declaratory relief. Unlike the original complaint, the FAC did not use the term "taxpayer action," instead Davis referred to himself throughout as "TAXPAYER." Also, the labels for each of the first six causes of action in the FAC echoed the original complaint's label for the taxpayer action by beginning: "Recovery of Funds Paid by [Fresno Unified] to CONTRACTOR …."[5]

Paragraph three of the FAC alleged Davis owned real property within the school district and paid taxes on that property. It also alleged Davis's claims did not seek money or damages from any local public entity and, instead, the action was brought solely in the public interest to recover Fresno Unified funds paid to others. Paragraph eight of the FAC alleged the "action is brought in this court as a special *in rem* proceeding for judicial

---

[5] California Rules of Court, rule 2.112 provides that each separately stated cause of action must specifically state (1) its number, (2) its nature, (3) the party asserting it if there are multiple plaintiffs, and (4) the party or parties to whom it is directed. An example of appropriate labeling is "first cause of action for fraud by plaintiff Jones against defendant Smith."

examination and invalidation of the contracts referenced below relative to the Project." Paragraph nine of the FAC alleged Fresno Unified did not file an action to validate the contracts related to the project and, therefore, the action was properly brought by Davis under section 863.

Paragraph 15 of the FAC alleges the Construction Contracts were not awarded as required by law and, therefore, were ultra vires, illegal, void and unenforceable, requiring monies paid to the Contractor be repaid to Fresno Unified. More specifically, the FAC's first and third causes of action allege the Construction Contracts were awarded to Contractor in violation of the competitive bidding requirements for public construction contracts because the contracts did not satisfy the criteria for Education Code section 17406's exception to the competitive bidding requirements.

In addition, the FAC's fourth cause of action alleges common law conflict of interest principles and Government Code section 1090 precluded Contractor from being awarded the Construction Contracts because Contractor previously acted as a professional consultant to Fresno Unified relative to the project and was involved in designing and developing the plans and specifications for the project. The fourth cause of action further alleges the preconstruction services agreement created a conflict of interest for Contractor vis-à-vis subsequent contracts involving the project and, consequently, the Construction Contracts between Fresno Unified and Contractor were ultra vires, void and unenforceable, requiring all money paid thereunder to be returned by Contractor to Fresno Unified.

The final paragraph of each of the FAC's first six causes of action address the consequences of the violation or breach asserted by reiterating part of the allegations in paragraph 15. In particular, those paragraphs state the Construction Contracts are ultra vires, illegal, void and unenforceable under California law *and* all monies paid by Fresno Unified under the contracts must be paid back or returned by Contractor.

10.

The FAC's prayer for relief asked the trial court to (1) authorize publication of the summons as the method for obtaining jurisdiction over all interested parties, (2) find the "action was properly brought under CCP § 863 et seq., for judicial invalidation of proceedings leading up to and including the approval, execution and delivery of the Site Lease and Facilities Lease," (3) declare the Site Lease and Facilities Lease ultra vires, illegal, void or unenforceable, and (4) order Contractor to pay back to Fresno Unified all monies received under the Site Lease and Facilities Lease. Davis also requested reasonable attorney fees under section 1021.5 and costs.

*First Appeal*

In 2013, Fresno Unified and Contractor filed separate, similar demurrers to the FAC.[6] (*Davis I*, *supra*, 237 Cal.App.4th at p. 274.) The trial court sustained the demurrers with leave to amend, Davis chose not to amend, and judgment was entered in favor of Fresno Unified and Contractor. Davis appealed. (*Ibid*.)

In June 2015, we reversed the judgment and remanded with instructions to overrule the demurrer except as to the second cause of action (breach of fiduciary duty), the fifth cause of action (improper use of lease-leaseback arrangement when sufficient funds are available), and the conflict of interest claim based on the Political Reform Act of 1974, Government Code section 81000 et seq. (*Davis I*, *supra*, 237 Cal.App.4th at p. 302.) The FAC's counts or legal theories that survived the demurrer alleged (1) other violations of California's competitive bidding laws and Education Code sections 17406 and 17417 (first and third causes of action) and (2) conflicts of interest under

---

**6** Filing a demurrer or answer without raising a jurisdictional objection constitutes a general appearance. (See *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.) " 'A general appearance operates as a consent to jurisdiction of the person, dispensing with the requirement of service of process, and curing defects in service.' " (*Ibid*.; Code Civ. Proc., § 410.50, subd. (a).) Here, Contractor's general appearance is one basis for concluding the trial court had personal (i.e., *in personam*) jurisdiction over Contractor.

11.

Government Code section 1090 and common law principles (fourth cause of action). In August 2015, after the Supreme Court denied review, this court issued a remittitur to the trial court.

*Proceedings on Remand*

In October 2015, Fresno Unified and Contractor filed answers to the FAC that contained general denials and asserted many affirmative defenses, including mootness.

In April 2016, Fresno Unified filed a motion for judgment on the pleadings on the grounds Davis lacked standing to pursue the claims. In May 2016, the trial court denied the motion.

In August 2016, Davis filed a motion for summary adjudication of his statutory and common law conflict of interest claims against Contractor. In February 2017, the trial court denied Davis's motion for summary adjudication, concluding there was at least a triable issue of fact regarding whether Contractor was an officer or employee for purposes of Government Code section 1090. Davis filed a petition for writ of mandate with this court seeking an order directing the trial court to grant the motion for summary adjudication. We summarily denied the petition.

*Judgment on the Pleadings*

In May 2019, Fresno Unified filed another motion for judgment on the pleadings. This motion argued Davis's FAC was subject to California validation statutes and his reverse validation action was moot because the Construction Contracts had been fully performed. Contractor joined in Fresno Unified's motion. The motion was supported by a request for judicial notice of the notice of completion recorded on December 4, 2014, by the Fresno County Recorder, which notice stated the construction of the middle school was completed on November 13, 2014.

Davis's opposition argued the trial "court can still grant Taxpayer his primary relief requested (disgorgement from [Contractor] to [Fresno Unified]) so this case is not moot." (Fn. omitted.) Davis argued his *taxpayer* claims were not moot because (1)

12.

conflict of interest claims are not subject to the validation statutes, (2) the contracts at issue were not the kind that are subject to validation, and (3) effective relief in the form of Contractor's disgorgement of monies received from Fresno Unified was available despite the contracts being fully performed. Davis characterized the FAC's gravamen[7] as "disgorgement back to [Fresno Unified] of all funds paid by [Fresno Unified] to [Contractor] under the challenged contracts based on breach of the legal duties asserted *in each cause of action*." (Italics added.) This argument is supported by, among other things, the statement in paragraph three of the FAC that "this action is brought *solely* in the public interest to recover to [Fresno Unified] funds it has paid to others under the contracts referenced below." (Italics added.)

In June 2019, the trial court heard argument on defendants' motion for judgment on the pleadings. On July 3, 2019, the court issued a written order granting the motion as to both defendants without leave to amend. The court later filed a judgment stating Davis's FAC was dismissed in its entirety and awarding allowable costs to Fresno Unified and Contractor. Davis appealed.

## DISCUSSION

### I.      BASIC LEGAL PRINCIPLES

#### A.      Judgment on the Pleadings

##### *1.      Statutory Provisions*

Section 438 allows defendants who have filed an answer to the complaint to "move for judgment on the pleadings." (§ 438, subds. (b)(1), (f)(2).) The two grounds a defendant may raise are that (1) "[t]he court has no jurisdiction of the subject of the cause

---

[7]      Black's Law Dictionary (8th ed. 2004) defines "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint." (*Id.* at p. 721.) In effect, Davis is arguing that his FAC's point of substance is the recovery of funds paid because a judgment stating a contract is invalid has less substance or impact than a judgment directing the disgorgement of funds.

13.

of action alleged in the complaint" or (2) "[t]he complaint does not state facts sufficient to constitute a cause of action against that defendant." (§ 438, subd. (c)(1)(B).)[8] These grounds "shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice." (§ 438, subd. (d).) If the motion is based on a matter that may be judicially noticed under Evidence Code sections 452 or 453, "the matter shall be specified in the notice of motion, or in the supporting points and authorities," unless the court permits otherwise. (§ 438, subd. (d); see *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999 [appellate court's review of a judgment on the pleadings is limited to factual allegations in pleading and any matter for which judicial notice may be taken].) For purposes of this appeal, we treat defendants' mootness argument as a challenge to whether Davis has alleged sufficient facts[9] to constitute a cause of action (§ 438, subd. (c)(1)(B)(ii)), rather than a challenge to the trial court's subject matter jurisdiction (§ 438, subd. (c)(1)(B)(i)).

When determining whether a complaint states facts sufficient to constitute a cause of action, trial and appellate courts apply the following principle: "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (§ 452.) If a motion for judgment on the pleadings is granted as to the entire complaint without leave to

---

[8] The quoted text is identical to that appearing in section 430.10, subdivisions (a) and (e) except the quoted text refers to the "complaint" instead of the "pleading." Section 430.10 sets forth the grounds that may be raised in a demurrer.

[9] Davis's allegations include the contents of the Construction Contracts and related board resolution, which were attached to the FAC as exhibits. A motion for judgment on the pleadings, like a general demurrer, admits the contents of a contract attached to the complaint as an exhibit. (See *Martinez v. Socoma Companies Inc.* (1974) 11 Cal.3d 394, 400 [general demurrer admits the contents of an instrument attached to the complaint].) Our interpretation of the Construction Contracts in *Davis I* did not consider parol evidence or the more basic question of whether parol evidence was admissible for use in construing those contracts. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165–1166 [admissibility and use of parol evidence in contract interpretation].)

amend, "then judgment shall be entered forthwith in accordance with the motion."
(§ 438, subd. (h)(3).)

   2.  *Standard of Review*

  Some of the foregoing statutory provisions are reflected in our Supreme Court's statements about appellate review of an order granting a motion for judgment on the pleadings:

> "[W]e treat the properly pleaded allegations of [the] complaint as true, and also consider those matters subject to judicial notice. [Citations.] 'Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties.' [Citation.] 'Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory.' [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232.)

  When liberally construing a pleading, courts give its allegations an objectively reasonable interpretation, reading it as a whole and its parts in their context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) When a motion for judgment on the pleadings is granted for failing to state facts sufficient to constitute a legally cognizable claim, appellate courts apply the same rules that govern the review of orders sustaining a general demurrer. (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1401.) Thus, appellate courts are not bound by the trial court's interpretation of the pleading but are required to render their independent judgment on the legal question of whether a cause of action has been stated. (*Hoffman v. State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189; see *Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224, 1231 [sufficiency of allegations is a question of law].)

  B.  <u>Mootness Doctrine</u>

  Generally, California courts decide only justiciable issues. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).) Justiciability means the questions litigated are based on an actual controversy. (*Ibid*.) Unripeness and mootness describe situations where there is no justiciable controversy.

(*Ibid*.)  Unripe cases are those in which an actual dispute or controversy has yet to come into existence.  (*Ibid*.)  In comparison, mootness occurs when an actual controversy that once was ripe no longer exists due to a change in circumstances.  (*Ibid*.)

As the parties recognize, the test for determining whether a case is moot is "whether the court can grant the plaintiff any effectual relief."  (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574.)  As a general rule, when events render a case moot, the trial or appellate court should dismiss it.  (*Ibid*.; see *Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 752 [if a controversy is not justiciable, the proper remedy is to dismiss rather than rendering judgment for one side or the other].)

C.  Validation Actions

1.  *Action by Public Agency*

A validation action "is a lawsuit filed and prosecuted for the purpose of securing a judgment determining the validity of a particular … governmental decision or act."  (*Blue v. City of Los Angeles* (2006) 137 Cal.App.4th 1131, 1135, fn. 4.)  Validation actions are governed by the chapter in the Code of Civil Procedure that contains sections 860 through 870.5.  Section 860 provides:

> "A public agency may upon the existence of any matter which under any other law is authorized to be determined all to this chapter, and for 60 days thereafter, bring an action in the superior court … to determine the validity of such matter.  The action shall be in the nature of a proceeding in rem."

Public agencies are not obligated to bring validation actions.  Instead, an agency may choose to do nothing and allow the agency decision or act to be validated by operation of law based on the passage of time.  (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1420, fn. 12.)  Section 869 provides that "[n]o contest … of any thing or matter under this chapter shall be made other than within the time and the manner herein specified."

16.

## 2. Reverse Validation by Interested Person

Prior to the expiration of the 60-day period, an "interested person" may initiate a proceeding to determine the validity of a particular agency decision or act. (§ 863.) Generally, such a proceeding is called a " 'reverse validation action.' " (*Planning & Conservation League v. Department of Water Resources* (2000) 83 Cal.App.4th 892, 922; cf. *Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1096 [action under § 863 is "a so-called 'inverse' or 'reverse' validation proceeding"] (*Castaic Lake*).) Section 863 states: "If no proceedings have been brought by the public agency pursuant to this chapter, any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter."[10] When the 60-day period passes without an interested person bringing an action under section 863, the agency's decision becomes immune from attack whether it is legally valid or not. (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 341–342 (*Ontario*).)

## 3. Statutory Purpose

The validation statutes and the 60-day limitation period seek (1) to limit the extent to which litigation may delay and thus impair a public agency's ability to operate financially and (2) to remove uncertainty adversely impacting the agency's access to credit. (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 843 (*Friedland*).) Litigation, either pending or forthcoming, affects the marketability of public bonds and

---

[10] The remainder of section 863 states: "The public agency shall be a defendant and shall be served with the summons and complaint in the action in the manner provided by law for the service of a summons in a civil action. In any such action the summons shall be in the form prescribed in Section 861.1 except that in addition to being directed to 'all persons interested in the matter of [specifying the matter],' it shall also be directed to the public agency. If the interested person bringing such action fails to complete the publication and such other notice as may be prescribed by the court in accordance with Section 861 and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person."

the agency's ability to obtain other types of third-party financing. (*Ibid*.) The inability to obtain financing or the higher cost of that financing may impair the agency's ability to fulfill its responsibilities. (*Ibid*.)

Based on these concerns with delays and uncertainty, a central theme in the validation procedures is the speedy determination of the validity of the public agency's decision or act in a single dispositive final judgment. (*Friedland*, *supra*, 62 Cal.App.4th at p. 843.) Accordingly, the validation statutes are construed to further their purpose— that is, promptly settling all questions about the validity of the agency's decision or act. (*Ibid*.; see § 870 [conclusive and binding effect of a judgment in a validation action].)

### 4. *Scope of Validation Actions*

Not all acts or transactions of a public agency are subject to validation. (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 19 (*Kaatz*).) The language in section 860 does not specifically identify the matters subject to validation actions. Instead, section 860 refers to "any matter which under any other law is authorized to be determined pursuant to this chapter." Based on this reference to "any other law," California courts examine other statutes (and cases interpreting those statutes) to determine the scope of agency decisions and acts that are subject to validation under the validation statute. California has over 200 statutes that provide validation proceedings, most of which are found in the Government Code and the Water Code. (*Kaatz*, *supra*, at p. 31, fn. 19.)

The scope of the validation statutes is further defined by the text referring to a validation action as an *in rem* proceeding. As an *in rem* proceeding, a validation action operates against the property in question and, therefore, is distinct from a judgment, order or injunction that operates against persons. (*Friedland, supra,* 62 Cal.App.4th at p. 843.)

For purposes of this appeal, "any other law" refers to Government Code section 53511, subdivision (a), which states in full: "A local agency may bring an action to determine the validity of its bonds, warrants, *contracts*, obligations or evidences of

indebtedness pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." (Italics added.) Application of this text raises the question of whether the Construction Contracts qualify as "contracts" for purposes of Government Code section 53511, subdivision (a). Davis contends they do not. Defendants argue the contrary. The narrow interpretation given to the term "contracts" and how that interpretation applies to the Construction Contracts is discussed in part III.B.2., *post*.

### 5. Relief Available in Validation Action

California's test for mootness asks whether the court can grant any effectual relief. (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574.) Consequently, we identify the relief available in a validation action. A typical validation proceeding "seeks a declaratory judgment that the bonds, assessments, etc., of the agency are or are not valid." (*Ontario*, *supra*, 2 Cal.3d at p. 344.) Injunctive relief or an order compelling restitution to the public agency of all money unlawfully paid are not authorized by the validation statutes. (*Id*. at pp. 344–345.) Accordingly, regardless of whether a validation action is brought by a public agency or an interested person, the relief available is limited to a judgment declaring the subject matter of the action is valid or invalid.

### D. Taxpayer's Action

"[S]ection 526a permits a taxpayer to bring an action to restrain or prevent an illegal expenditure of public money. No showing of special damage to a particular taxpayer is required as a requisite for bringing a taxpayer suit." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29.) The primary purpose of section 526a is to " 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' " (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267–268 (*Blair*).) To promote this remedial purpose, section 526a is construed broadly. (*Blair*, *supra*, at p. 268.) The breadth of taxpayer's

19.

actions is demonstrated by the variety of legal theories that may be raised. For example, a taxpayer's action may include claims alleging fraud, collusion, ultra vires transaction, or the failure to perform mandatory duties. (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 160; see *Miller v. McKinnon* (1942) 20 Cal.2d 83, 96 [taxpayer had standing to sue based on noncompliance with competitive bidding statute].) The scope of taxpayer's actions is not unlimited; they must not trespass into the domain of legislative or executive discretion but must measure governmental performance against a legal standard. (*Harman*, *supra*, at pp. 160–161.)

Section 526a addresses the remedies available in a taxpayer's action by referring to a judgment "restraining and preventing any illegal expenditure" of funds or other property by a local agency. Thus, an injunction preventing the illegal payment of funds is explicitly authorized. (*Blair*, *supra*, 5 Cal.3d at p. 268.) Our Supreme Court has construed the statute broadly and has "even permitted taxpayers to sue on behalf of a city or county to recover funds illegally expended. (*Osburn v. Stone* (1915) 170 Cal. 480, 482 [150 P. 367].)" (*Blair*, *supra*, at p. 268; see 59 Cal.Jur.3d (2012) Taxpayers' Actions, § 7, pp. 191–193 [restoration of public funds].) Furthermore, "the fact that [the taxpayer] could have enjoined the illegal expenditure does not prevent [him] seeking to recover on behalf of the [local agency] monies illegally expended." (59 Cal.Jur.3d, *supra*, Taxpayers' Actions, § 7, pp. 192–193, citing *Osburn v. Stone*, *supra*, 170 Cal. 480.)

## II.   INTERPRETING DAVIS'S PLEADING

The first dispute we consider is whether the FAC alleges only a validation action or, alternatively, sets forth both a validation action and a taxpayer's action. This is a matter of interpretation, which is a question of law. Our interpretation of Davis's pleadings is guided by the principle that the "label given a petition, action or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading." (*Escamilla v.*

20.

*Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511.) Although captions and labels are not determinative, they may provide some insight into the claims a plaintiff attempted to pursue. (See Cal. Rules of Court, rules 2.111(6) [first page of pleading must state the character of the action or proceeding], 2.112 [information about each cause of action or count].)

Once we have identified the claim or claims Davis attempted to pursue, we can proceed to the question of whether the claim "falls within the boundaries of a particular legislative declaration that the validation statutes apply." (*Santa Clarita Organization for Planning & Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, 308 (*Abercrombie*).) In this case, the "particular legislative declaration" is Government Code section 53511, subdivision (a). (See pt. I.C.4., *ante*.) Whether Davis's claim or claims fall within the boundaries or language of Government Code section 53511, subdivision (a) involves an assessment of the gravamen of the complaint and the nature of the right sued upon, rather than the form of the action or relief demanded. (*Abercrombie*, *supra*, at p. 308.) That assessment is undertaken in part III.B.2. of this opinion.

A.    <u>Contents of the Pleadings</u>

*1.    Original Complaint*

The original complaint provides background for our interpretation of the FAC. Its caption states it is a complaint for (1) reverse validation pursuant to section 863 and (2) recovery of public funds expended on an illegal contract. The second cause of action was labeled "Taxpayer Action for Recovery of Funds Paid by [Fresno Unified] to [Contractor] on Facilities Lease." Consistent with the label's reference to a taxpayer action, paragraph 24 of the original complaint states: "Pursuant to long standing California law, any contract not made in strict conformity with the legal requirements thereto is null, void and unenforceable and a *taxpayer can bring an action on behalf of the public entity involved therein for recovery of all funds paid thereunder*." (Italics

21.

added.)  Thus, the labels and allegations contained in the original pleadings show Davis attempted to state both a reverse validation action under section 863 and a taxpayer's action.

Furthermore, the prayer for relief on the second cause of action requested injunctive relief and an order directing Contractor "to pay back to [Fresno Unified] all monies received under any contract relative to the Project."  Based on the foregoing contents of the original complaint, an objectively reasonable person familiar with California law would construe it as asserting both a reverse validation action (first cause of action) and a taxpayer action (second cause of action).

### 2.  *First Amended Complaint*

Davis's FAC, unlike his original complaint, does not use the term "taxpayer action."  Also, the FAC does not cite section 526a.  These omissions create the possibility that Davis abandoned the taxpayer action when he filed the FAC and focused exclusively on bringing a reverse validation action.  However, the FAC's allegations, labels, and prayer for relief demonstrate otherwise.

For instance, Davis refers to himself as "TAXPAYER" throughout the FAC. Also, the FAC's first paragraph states Davis brings the action on behalf of himself, taxpayers and all others similarly interested to (1) contest the validity of the Construction Contracts and (2) "recover to FRESNO UNIFIED … all monies paid by it under said contracts."  The recovery of monies paid is emphasized in the labels for each of the FAC's first six causes of action, all of which begin:  "Recovery of Funds Paid by [Fresno Unified] to CONTRACTOR …."  The last sentence in the final paragraph of each of the first six causes of action—that is, paragraphs 26, 31, 41, 47, 51 and 55 of the FAC— assert the Construction Contracts are ultra vires, illegal, void and unenforceable under California law *and* all monies paid by Fresno Unified under the contracts must be paid back or returned by Contractor.

The prayer for relief in the FAC is drafted so that each of the seven numbered paragraphs apply to "each of the foregoing causes of action." The first numbered paragraph requests an order allowing notice of the lawsuit be given by publication, a procedure specifically authorized by the validation statutes. (§§ 861, 861.1.) The second paragraph requests a finding that "this action was properly brought under CCP § 863 et seq., for judicial invalidation of proceedings." The third paragraph asks the court to declare the Site Lease and the Facilities Lease "are ultra vires, illegal, void, and/or unenforceable." The fourth numbered paragraph of the FAC's prayer for relief requests that Contractor be ordered to pay back to Fresno Unified all monies received under the Site Lease and the Facilities Lease.

B.     Analysis of the First Amended Complaint

        1.     *Claims Remaining*

Our analysis of the FAC's contents to determine whether Davis attempted to assert only a validation action or whether he attempted to combine a validation action with a taxpayer's action examines only the causes of action remaining after defendants' earlier demurrer. In other words, we consider only the operative portions of the FAC. In *Davis I*, we reversed the judgment of dismissal and directed the trial court to enter an order sustaining the demurrer on the breach of fiduciary duty claim (the second cause of action), the conflict of interest claim based on a violation of the Political Reform Act of 1974, and the fifth cause of action alleging the use of a lease-leaseback arrangement is improper when funds for construction are available to a school from another source. (*Davis I*, *supra*, 237 Cal.App.4th at p. 302.) We also directed the trial court to overrule "the demurrer as to the other causes of action." (*Ibid*.) As a result, the legal theories surviving the demurrer fall into two categories: (1) violations of California's competitive bidding laws and Education Code sections 17406 and 17417 (first and third causes of

23.

action) and (2) conflict of interest claims (fourth cause of action). The conflict of interest claims are based on Government Code section 1090 and common law principles.

### 2. Reverse Validation Action

It is undisputed that the FAC sets forth a reverse validation action asserting the invalidity of the Construction Contracts based on conflicts of interest and violations of California's competitive bidding laws and Education Code sections 17406 and 17417. Thus, the FAC's many references to validation or invalidation and the related statutes need not be described here. Because the FAC unambiguously alleges a reverse validation action, the critical question is whether Davis attempted to combine a taxpayer action with the reverse validation action.

### 3. Taxpayer's Action

California law allows a claim brought under the validation statutes to be combined in a single lawsuit with other types of claims. In *Regus*, *supra*, 70 Cal.App.3d 968, the court set forth the principle that "a validation action under … section 860 et seq., and a taxpayer's action under … section 526a are not mutually exclusive." (*Id.* at p. 972.) Accordingly, California law allowed Davis to pursue a validation action and a taxpayer action in a single lawsuit. In other words, the fact that Davis pursued a reverse validation action in the FAC does not necessarily prevent his pursuit of a taxpayer's action in the same pleading.

Initially, we note that paragraph eight of the FAC stated in full: "This action is brought in this court as a special *in rem* proceeding for judicial examination and invalidation of the contracts referenced below relative to the Project."[11] Paragraph eight

---

[11] This statement is similar to the statement made in the complaints considered in *McGee v. Torrance Unified School Dist.* (2020) 49 Cal.App.5th 814 (*McGee II*). There, the Second District stated, "McGee alleged each complaint was 'brought in this court as a special *in rem* proceeding' to declare the challenged agreements void and invalid." (*Id.* at p. 820.)

did not state the action was brought as "exclusively" or "only" as an *in rem* proceeding for the invalidation of the Construction Contracts. Conversely, it did not state that it was brought as, "among other things," a special *in rem* proceeding. Consequently, the question of interpretation presented is whether to infer the entire lawsuit was brought exclusively as an *in rem* validation proceeding. Whether such an inference should be drawn requires an evaluation of the contents of the FAC as a whole. (See *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318 [pleading interpreted as a whole with its parts read in context.) Also, because "pleadings are to be liberally construed in favor of the pleader" (*Advanced Modular Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 835), the inference drawn should be favorable to Davis so long as it is objectively reasonable.

Viewing the FAC as a whole and reading its parts in context, we consider its repeated statements that all monies paid to Contractor by Fresno Unified under the Construction Contracts must be paid back by Contractor and its prayer for relief requesting that Contractor be ordered to pay back the monies. These statements and prayer for relief unequivocally demonstrate Davis was seeking a remedy that is not available in a validation action but is available in a taxpayer's action. In *Ontario*, *supra*, 2 Cal.3d 335, our Supreme Court stated a typical validation proceeding "seeks a declaratory judgment that the bonds, assessments, etc., of the agency are or are not valid." (*Ontario*, *supra*, 2 Cal.3d at p. 344.) The plaintiff in *Ontario* prayed for a declaration invalidating agreements for the creation and operation of a speedway and related bonds. (*Ibid*.) The plaintiff also sought two other kinds of relief: (1) an injunction restraining the parties from spending funds or doing any other acts to further the project and (2) an order compelling restitution to the city of all money unlawfully paid in connection with the project. (*Ibid*.) As to the injunctive relief, the Supreme Court concluded it was not authorized under the validation statutes but remained available in a taxpayer action. (*Id*. at pp. 344–345.) As to the restitution of public funds, the court stated: "Nothing in the general validating statute contemplates such an in personam

25.

cause of action for repayment of public money unlawfully expended, and again no reason appears to deny plaintiffs their normal remedy in this regard." (*Id*. at p. 345.) This statement about a normal remedy refers to the relief available in a taxpayer action and comports with the principle that a validation action may be combined with taxpayer action in a single lawsuit.

Based on *Ontario* and the contents of the FAC, we conclude an objectively reasonable person would construe the FAC as pursuing (i.e., attempting to assert) both a validation action and a taxpayer action. Accordingly, the trial court's conclusion that this lawsuit should be characterized solely as a reverse validation action cannot be upheld based on our interpretation of the FAC and the claims it attempted to assert.

### 4. Dual Nature of the Lawsuit Was Not Abandoned

The dual nature of Davis's lawsuit means the FAC's remaining legal theories or causes of action—specifically, the alleged violations of California's competitive bidding laws and Education Code sections 17406 and 17417 and the conflict of interest claims— were intended to perform a double duty. First, looking at the FAC as a reverse validation action, those theories of illegality set forth the grounds for invalidating the Construction Contracts. Second, examining the FAC as a taxpayer's action, those theories of illegality adequately allege a basis for requiring Contractor to return (i.e., repay, refund, restore or disgorge) the public funds paid under the Construction Contracts. In other words, in the taxpayer's action, Davis is attempting to establish public funds were illegally expended by proving the Construction Contracts (1) violated California's competitive bidding laws and Education Code sections 17406 and 17417, (2) violated the prohibition on conflicts of interest set forth in Government Code section 1090, or (3) violated the common law principles governing conflicts of interest.[12] (See *San Diegans*, *supra*, 8 Cal.5th at p. 746

---

[12]     These claims, which also can be referred to as theories of liability, are described in *Davis I*, *supra*, 237 Cal.App.4th at pages 271, 290 (pt. II.E., summary of competitive

26.

["violations of section 1090 can be challenged … by taxpayers under Code of Civil Procedure section 526a where appropriate"].)

The foregoing interpretation of the FAC is supported by the arguments Davis made in opposing the motion for judgment on the pleadings and the arguments he raised on appeal. For example, Davis's opposition to the motion asserted his taxpayer's complaint was not moot (1) because the conflict of interest claims were not subject to the validation statutes, (2) the court could grant effectual relief by ordering disgorgement even though the contracts were fully performed, and (3) the Construction Contracts were not the kind of contracts that are subject to the validation statutes. Davis argued the cases relied upon by defendants were distinguishable because the plaintiffs in those cases did not seek disgorgement of monies paid under void contracts—a remedy not available in a reverse validation action. On appeal, Davis's opening brief cites *Regus* for the principle that a validation action and a taxpayer's action under section 526a are not mutually exclusive. Furthermore, that brief requests this court to reverse the judgment and remand the matter with directions to "immediately proceed with trial on the merits of [Davis's] in person[a]m taxpayer claims against [Contractor]." The brief also states Davis "expressly seeks a judgment against [Contractor] for disgorgement of all money paid by [Fresno Unified] to [Contractor] *under the challenged contracts that are void on account of one or more of Appellant's causes of action*." (Italics added.) Consequently, Davis's opposition to the motion for judgment on the pleadings and his appellate briefing cannot be construed as abandoning or forfeiting the taxpayer's action portion of this lawsuit.

## III. AVAILABLE REMEDIES AND MOOTNESS

Based on our conclusion that Davis is pursuing both a validation action and a taxpayer action, our application of California's mootness doctrine considers what

---

bidding allegations), 299 to 301 (pt. IV.B.3., analysis of statutory conflict of interest claim), and 301 (pt. V.C., common law conflict of interest claim).

remedies are available in each type of action and whether any available remedy would constitute "effectual relief." (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574.)

### A. Validation Action

The relief granted in a validation action is a declaratory judgment stating the subject of the lawsuit is or is not valid. (*Ontario*, *supra*, 2 Cal.3d at p. 344.) Here, the Site Lease and the Facilities Lease have been fully performed and they are no longer in effect. Accordingly, the question presented is whether a declaratory judgment stating the leases are invalid would constitute effectual relief. Based on existing case law, we conclude a declaratory judgment invalidating the fully performed leases would not be effectual relief.

In *Jennings v. Strathmore Public Utility Dist.* (1951) 102 Cal.App.2d 548 (*Jennings*), the plaintiff filed a lawsuit against a public utility district and two contractors seeking an injunction and a declaration that certain construction contracts were void. (*Id.* at p. 548.) The injunction sought to stop further construction of a sewage disposal plant and distribution lines. (*Ibid.*) The plaintiff alleged the contracts had been made in violation of the Labor Code prevailing wage rate requirements. (*Jennings, supra,* p. 549.) The utilities district filed a motion to dismiss, contending (1) the remedies in the Labor Code were exclusive and (2) the plaintiff was not a taxpayer and, therefore, lacked the requisite interest to maintain the action. (*Jennings, supra,* at p. 549.) The trial court granted the motion to dismiss and the plaintiff appealed. While the appeal was pending, "the work, which was in the process of completion at the time of trial, [was] fully completed, all contractors and workmen [were] paid in full, and notice of completion [was] filed and recorded in June 1950." (*Ibid.*)

The utilities district argued on appeal that the matter had become moot and the appeal should be dismissed. (*Jennings*, *supra*, 102 Cal.App.2d at p. 549.) The appellate court agreed. First, the court concluded the issue of enjoining or restraining the district

28.

from proceeding with the work had become moot because the work had been completed. Second, the court concluded the question of the invalidity of the two contracts was moot because "a declaration that the contracts were void would not afford plaintiff any relief." (*Id*. at p. 550.) In other words, "a decision as to the validity of the contracts, at this time, after the work has been completed and after the payments have been made and where no relief under the complaint could be afforded plaintiff, would be purely academic and would serve no useful purpose." (*Id*. at p. 551.)

Although *Jennings* is distinguishable from the present case because *Jennings* did not include a taxpayer action, we conclude it establishes the precedent that a declaratory judgment as to the validity of completed contracts is not effectual relief. Based on this precedent, we conclude Davis's request for a declaratory judgment stating the Site Lease and the Facilities Lease are invalid is moot because such a judgment provides no effectual relief. (See *Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557 [county contract in question had expired]; *County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1628–1629 [certain environmental claims were moot because they challenged acts taken under a contract that was no longer in effect]; *Giles v. Horn* (2002) 100 Cal.App.4th 206, 227 [challenge to county contracts was moot where contracts had been fully performed and had expired].) Accordingly, dismissal of the validation portion of Davis's lawsuit is appropriate on grounds of mootness. (See *Wilson*, *supra*, 191 Cal.App.4th at p. 1574; *Connerly v. Schwarzenegger*, *supra*, 146 Cal.App.4th at p. 752 [proper remedy for mootness is dismissal rather than rendering judgment for one side or the other].)

B.     Taxpayer Action

Next, we consider whether disgorgement of monies received by Contractor is a remedy that continues to be available in Davis's taxpayer's action. In the taxpayer's action, Davis alleges the expenditure of funds under the Construction Contracts was

illegal because of (1) violations of California's competitive bidding laws and Education Code sections 17406 and 17417 and (2) conflicts of interest. As described below, restoration of illegally expended public funds is an available remedy and, therefore, Davis's taxpayer action is not moot.

### 1. Disgorgement in Taxpayer Actions

In *Ontario*, *supra*, 2 Cal.3d 335, the Supreme Court discussed the scope of the validation statutes and their relationship to taxpayer actions under section 526a. (*Ontario*, *supra*, at pp. 344–345.) The court determined (1) the validation statutes did not repeal section 526a by implication, (2) restitution of public funds paid for unlawful purposes was a remedy available in a taxpayer action, and (3) no reason appeared to justify denying taxpayers the normal remedy of restitution in an in personam cause of action for repayment of public monies unlawfully expended. (*Ontario*, *supra*, at pp. 344–345; see *Miller v. McKinnon*, *supra*, 20 Cal.2d at p. 96 [cause of action exists for taxpayer to, on behalf of public agency, recover illegally paid money from person receiving such funds].)

More recently, in *San Diegans*, *supra*, 8 Cal.5th 733, the Supreme Court noted, but did not decide, the question of whether the plaintiff taxpayer organization's claim of a conflict in interest brought as a taxpayer action could seek disgorgement of payments received. That question was remanded to the Court of Appeal. (*Id*. at p. 747.) In *San Diegans*, the main issue addressed and resolved by the Supreme Court was whether the plaintiff had standing under Government Code section 1092 to raise the conflict of interest claim and seek invalidation of the contracts. The court concluded that Government Code section 1092 "does not provide plaintiff a private right of action because it was not a party to the contracts." (*San Diegans*, *supra*, at p. 736.)[13] In its rationale, the court stated:

---

[13]     In footnote 20 of *Davis I*, *supra*, 237 Cal.App.4th at page 297, we stated "Defendants did not base their demurrer on the ground Davis lacked standing to bring the

"Because violations of section 1090 can be challenged by contractual parties under section 1092, *by taxpayers under Code of Civil Procedure section 526a where appropriate*, and by the Attorney General, district attorneys, and the [Fair Political Practices] Commission, there is no compelling reason to conclude that section 1092 creates a private right of action for nonparties to sue to avoid public contracts." (*San Diegans*, *supra*, 8 Cal.5th at p. 746, italics added.)

Our Supreme Court's statement that violations of Government Code "section 1090 can be challenged … by taxpayers under … section 526a *where appropriate*" (*San Diegans*, *supra*, 8 Cal.5th at p. 746, italics added) raises the question of whether, in the circumstances presented, Davis's conflict of interest claims and his other statutory claims are "appropriate" for a taxpayer's action under section 526a.

### 2. *Contracts Subject to Validation*

For purposes of this appeal, we assume without deciding that the taxpayer's action is not "appropriate" if the specific contracts in question fall within the scope of the validation statutes and therefore could be successfully validated. (See generally, § 869.) We frame the appropriateness issue in this manner for two reasons.

First, we stated earlier that after identifying the claims Davis attempted to pursue, we would address whether those claims "fall[] within the boundaries of a particular legislative declaration that the validation statutes apply" (*Abercrombie*, *supra*, 240 Cal.App.4th at p. 308) and identified the "particular legislative declaration" as Government Code section 53511, subdivision (a). (See pt. II.A., *ante*.) We noted such

---

conflict of interest claim under Government Code section 1090 since it is recognized that either the public agency or a taxpayer may seek relief for a violation of section 1090." We supported this statement by citing *Thomson v. Call* (1985) 38 Cal.3d 633 and Kaufmann & Widiss, *The California Conflict of Interest Laws* (1963) 36 So.Cal. L.Rev. 186, 200 ("Either the public agency itself or a taxpayer may seek the relief afforded under Section 1092 by way of having the contract declared void, or seek restitution of any amounts paid out by the public agency"). In dictum contrary to the statutory interpretation later adopted in *San Diegans*, we stated Government Code section 1092's "term 'any party' is not restricted to parties to the contract." (*Davis I*, *supra*, at p. 297, fn. 20; see *San Diegans*, *supra*, 8 Cal.5th at p. 744.)

31.

an inquiry involves an assessment of the gravamen of the complaint and the nature of the right sued upon. (*Ibid.*; see *Abercrombie*, *supra*, at p. 308.)

Second, the defendants' contentions suggest a taxpayer's action is not "appropriate" in the circumstances of this case. Specifically, Contractor argues this case is moot because (1) disgorgement is not an available remedy and (2) disgorgement is not available because the Construction Contracts fall within the ambit of Government Code section 53511 and the validation statutes. Varying this contention slightly, Fresno Unified argues that Davis's conflict of interest claims are subject to validation and, therefore, he cannot obtain effective relief through disgorgement.

Defendants support their arguments by citing *McGee II*, a case in which the Second District concluded "section 526a taxpayer claims alleging violations of [Government Code] section 1090 *may* still fall within the validation statutes." (*McGee II*, *supra*, 49 Cal.App.5th at p. 826, italics added.) The court determined McGee's conflict of interest claims relating to lease-leaseback agreements in that case were subject to validation and, therefore, "McGee cannot obtain effective relief through disgorgement." (*Id.* at p. 828.)

In *McGee II*, the parties disputed whether the lease-leaseback agreements between a school district and construction contractor were subject to the validation statutes. (*McGee II*, *supra*, 49 Cal.App.5th at p. 823.) The court stated "the applicable law is Government Code section 53511, which declares the validation statutes apply to " 'an action to determine the validity of [a local agency's] bonds, warrants, *contracts*, obligations or evidences *of indebtedness*.' (Gov. Code, § 53511, subd. (a), italics added.)" (*McGee II*, *supra*, at p. 823.) McGee argued the lease-leaseback agreements were not "contracts" for purposes of Government Code section 53511. (*Ibid.*)

Government Code section 53511's reference to "contracts" is construed narrowly. (*Kaatz*, *supra*, 143 Cal.App.4th at p. 35; see *Ontario*, *supra*, 2 Cal.3d at pp. 343–344.) "Although 'contracts' could be read to reach *all* contracts, the courts have defined it by

32.

reference to the clause in which it has been used, and thus to reach only those contracts 'that are in the nature of, or directly relate to a public agency's bonds, warrants or other evidences of indebtedness.' (*Kaatz*, *supra*, 143 Cal.App.4th at pp. 40, 42[.)]" (*Castaic Lake*, *supra*, 1 Cal.App.5th at p. 1099.) Thus, only contracts "involving financing and financial obligations fall" within subdivision (a) of Government Code section 53511—the relevant validation statute for purposes of this appeal. (*Friedland*, *supra*, 62 Cal.App.4th at p. 842.)

The court in *McGee II* analyzed whether the lease-leaseback agreements in that litigation were involved in financing and financial obligations by stating (1) it previously determined Education Code section 17406 authorizes lease-leaseback agreements without competitive bidding, (2) that statute had been characterized as providing a method of financing school construction, and (3) the use of validation actions was a common practice for school construction projects structured as a lease-leaseback arrangement. (*McGee II*, *supra*, 49 Cal.App.5th at p. 824.) Based on these statements and its earlier determination that McGee had failed to state a claim for a violation of the Education Code,[14] the court concluded "the lease-leaseback agreements involved the District's financial obligations and were inextricably bound up in the District's bond financing, bringing them within the scope of 'contracts' covered by Government Code section 53511." (*McGee II*, *supra*, at p. 824.) This determination led to the further conclusion that, "[b]ecause his conflict of interest claims [we]re subject to validation, McGee cannot obtain effective relief through disgorgement." (*Id*. at p. 828.)

---

[14]    In *McGee v. Balfour Beatty Construction, LLC* (2016) 247 Cal.App.4th 235, the court concluded the trial court properly sustained demurrers to McGee's causes of action alleging violations of competitive bidding requirements and provisions of the Education Code. (*McGee*, *supra*, at p. 249.) In contrast, the court concluded the demurrers should have been overruled as to the conflict of interest cause of action. (*Ibid*.)

Based on the parties' arguments and cases such as *McGee II*, *Friedland* and *Ontario*, we consider whether the Construction Contracts between Fresno Unified and Contractor constitute "contracts" for purposes of Government Code section 53511, subdivision (a). Our analysis of this issue is short because of our detailed discussions and conclusions in *Davis I*. In part II.A.2. of that opinion, we addressed the lease-leaseback method of financing for the delivery of new school facilities. (*Davis I*, *supra*, 237 Cal.App.4th at pp. 276–280.) We concluded the primary purpose of the lease-leaseback provisions in Education Code sections 17400 through 17425 was to authorize a new source of school financing. (*Davis, supra,* at p. 280.) We also considered the variation of the lease-leaseback arrangement used by Fresno Unified and Contractor in this case—a variation in which "the school district pays for the construction (using local bond funds) as it progresses, with the final payment being made when construction is completed. As a result, the school district does not occupy *and* use the new facilities as a rent-paying tenant for a set length of time." (*Ibid*., italics added.) Based on our interpretation of the Construction Contracts, we concluded that "[b]ecause the school district pays for the construction as it is completed, this alternate approach cannot be characterized as a method of financing the construction of new school facilities." (*Ibid*.)[15] In short, we held that the Construction Contracts were not true leases, only a construction contract with no element of financing included. We also held the leased property was not used by

---

**15**    This opinion's earlier description of the Facilities Lease quotes its provisions characterizing Fresno Unified's obligation to make the lease payments as "a current expense" and stating the lease payment "shall not in any way be construed as a debt of [Fresno Unified] in contravention of any applicable constitutional or statutory limitations or requirement concerning the creation of indebtedness of [Fresno Unified]."

For a detailed analysis of Education Code section 17406 and its application to Davis's allegations (including the terms of the Construction Contracts, which were attached to the FAC), see Parts II.B. through II.E of *Davis I*, *supra*, 237 Cal.App.4th at pages 281 through 291.

34.

the district during any portion of the lease period as required by Education Code section 17406, subdivision (a)(1).

Based on our conclusion that "the [Construction] Contracts did not include a financing component" (*Davis I*, *supra*, 237 Cal.App.4th at p. 291), which is consistent with the terms of the Facilities Lease stating Fresno Unified's obligations must not in *any way* be construed as debt or creating an indebtedness, it follows that the Construction Contracts are not "in the nature of, or directly relate[d] to a public agency's bonds, warrants or other evidences of indebtedness." (*Kaatz*, *supra*, 143 Cal.App.4th at p. 42.) Consequently, the Construction Contracts are not "contracts" for purposes of Government Code section 53511, subdivision (a) and, thus, are not subject to the validation statutes. Because the Construction Contracts are not subject to the validation statutes, it is "appropriate" for Davis to challenge their legality in a taxpayer's action under section 526a. (*San Diegans*, *supra*, 8 Cal.5th at p. 746.) Stated another way, the gravamen of the FAC and the nature of the rights and obligations being pursued by Davis fall outside the boundaries of the validation statute relied upon by defendants. (See *Abercrombie*, *supra*, 240 Cal.App.4th at p. 308.)

Consequently, we conclude Davis may pursue a taxpayer's action alleging the illegal expenditure of public funds based on conflicts of interest *and* violations of California's competitive bidding laws and Education Code sections 17406 and 17417.[16] Disgorgement of public funds is a remedy available under these theories asserted in a taxpayer's action and, therefore, Davis's lawsuit is not moot.

---

[16]    Our analysis of the Construction Contracts is distinguishable from that adopted by the court in *McGee II*. There, the court determined financing was a purpose of the lease-leaseback agreements before it and, therefore, the court was "satisfied the lease-leaseback agreement fell within Government Code section 53511, bringing them within the validation statutes." (*McGee II*, *supra*, 49 Cal.App.5th at p. 825.)

C.      Other Arguments

     1.      *Contractor's Interpretation of Davis I*

Contractor interprets our opinion in *Davis I* as already deciding Davis's lawsuit was a reverse validation action. Contractor's argument implies that this court's earlier opinion decided the FAC asserted *only* a reverse validation action and, moreover, necessarily determined the Construction Contracts constitute "contracts" under Government Code section 53511. Contractor's interpretation is based on footnote 4 of *Davis I*, which states in full:

> "Defendants could have avoided the uncertainty and risk associated with completing the project while this taxpayer challenge was pending by bringing a validation action under Code of Civil Procedure section 860 prior to starting construction. 'A validation action ... allows a public agency to obtain a judgment that its financing commitments are valid, legal, and binding. If the public agency has complied with statutory requirements, the judgment in the validation action binds the agency and all other persons.' (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 838 ….) The record in this case shows that the use of validation actions is a common practice for school construction projects structured as a lease-leaseback arrangement. (See fn. 5, *post*.)

> "Davis's taxpayer suit is a timely 'reverse validation' action because it was filed within 60 days of the adoption of the resolutions authorizing the execution of the [Construction] Contracts. (See Code Civ. Proc., §§ 860, 863.) Besides being a taxpayer, Davis is the president of Davis Moreno Construction, Inc., a general contractor that has handled construction projects for school districts. [Citations.]" (*Davis I*, *supra*, 237 Cal.App.4th at p. 273, fn. 4.)

First, our statement that the record showed school districts commonly used validation actions for construction projects structured as a lease-leaseback arrangement is a statement of historical fact, not a conclusion of law about the nature of the specific contracts at issue in the case. The fact that other lease-leaseback agreements have been validated does not mean the particular variation of the lease-leaseback arrangement adopted by Fresno Unified and Contractor qualifies for validation.

36.

Second, our statement that Fresno Unified and Contractor could have brought a validation action simply means such a proceeding could have been filed. It does not mean they would have been successful and obtained a judgment validating the Construction Contracts or, more specifically, that the variation of the lease-leaseback arrangement set forth in the Construction Contracts qualified for the exception to competitive bidding contained in subdivision (a)(1) of the Education Code section 17406 or was untainted by a conflict of interest. Given our conclusions that the terms of the Construction Contracts did not satisfy that provision of the Education Code, it is not reasonable to interpret our statement as implying defendants would have been successful in a validation proceeding.

Third, our statement that Davis's lawsuit is a timely reverse validation action—when read in context of the issues and arguments presented in the first appeal—does not imply that his lawsuit is *exclusively* a reverse validation action. It simply means Davis asserted a reverse validation action and had done so in a timely manner. Whether the Construction Contracts were subject to validation and, more specifically, whether they were "contracts" for purposes of Government Code section 53511, was not raised,[17] addressed or resolved in *Davis I*. Had we foreseen the arguments now raised, the first

---

[17] Apparently in response to *Davis I*, the Legislature in 2016 amended Education Code section 17406 to limit the amount of payments disgorged by construction contractors in certain situations. (Stats. 2016, ch. 521, § 2.) An added provision stated construction contractors who entered instruments determined to be invalid for failing to fall within the requirements of Education Code section 17046, subdivision (a)(1) "may be paid the reasonable cost, specifically excluding profit, of the labor, equipment, materials, and services furnished" if specified conditions were met. (Ed. Code, § 17406, subd. (d)(1).) As drafted, this provision appears to allow the disgorgement of profits and, therefore, has not entirely eliminated disgorgement as a remedy. Consequently, the discussion of mootness in the appellate briefing did not raise any issues about the interpretation and application of the amendment to the facts pleaded in this case. Accordingly, our analysis of mootness need not discuss it further.

sentence of the second paragraph of the footnote would have replaced "is" with "includes."

## 2. *Delay and Public Policy*

Contractor contends Davis's argument that disgorgement remains an available remedy overlooks the policies underlying the validation statutes and, like the plaintiff in *McGee II*, Davis did nothing to stop the construction even though injunctive remedies were available.

This argument might have been relevant if Davis's lawsuit was exclusively a reverse validation action. However, in the context of a taxpayer's action, "the fact that [the plaintiff] could have enjoined the illegal expenditure does not prevent [him] seeking to recover on behalf of the [local agency] monies illegally expended." (59 Cal.Jur.3d, *supra*, Taxpayers' Actions, § 7, pp. 192–193 [restoration of public funds], citing *Osburn v. Stone*, *supra*, 170 Cal. 480.) Here, we have determined the Construction Contracts (1) "did not include a financing component" (*Davis I*, *supra*, 237 Cal.App.4th at p. 291); (2) are not "contracts" for purposes of Government Code section 53511; and (3) are not subject to validation under the validation statutes. Consequently, the policy concerns applicable to contracts subject to validation do not apply to the Construction Contracts. (Cf. *Wilson*, *supra*, 191 Cal.App.4th at pp. 1580–1581.) As a result, defendants' criticism of Davis for failing to obtain an injunction stopping construction of the middle school is not a ground for concluding the remedy of disgorgement is unavailable in the taxpayer's action.[18]

## D. Summary

The FAC sets forth both a reverse validation action and a taxpayer's action. Davis's taxpayer action consists of several legal theories or counts alleging funds were

---

[18]    Based on this conclusion, we do not reach Davis's argument that he had an adequate remedy at law (i.e., disgorgement) and, therefore, he could not have obtained injunctive relief if he had tried.

illegally paid by Fresno Unified to Contractor. (See *Osburn v. Stone*, *supra*, 170 Cal. at p. 486 [various "counts" in taxpayer's complaint alleged illegal expenditure of public funds].) The counts assert violations of California's competitive bidding laws and Education Code sections 17406 and 17417 along with conflicts of interest prohibited by Government Code section 1090 and common law principles. The remedy of disgorgement is available under these counts asserted in Davis's taxpayer's action even though the Construction Contracts are fully performed. Consequently, the counts in Davis's taxpayer's action seeking disgorgement are not moot.

## DISPOSITION

The judgment is reversed. The trial court is directed to (1) vacate its order granting the motion for judgment on the pleadings, (2) enter a new order granting the motion as to the reverse validation portion of this lawsuit and denying the motion as to the taxpayer action and its underlying counts or legal theories, and (3) conduct further proceedings consistent with this opinion. Davis shall recover his costs on appeal.


FRANSON, J.

WE CONCUR:


DETJEN, Acting P.J.


PEÑA, J.